### H. P. HOOD & SONS *vs.* COMMONWEALTH.

Suffolk.   January 16, 1920. — May 19, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, & JENNEY, JJ.

*Tax,* On income of foreign corporation. *Corporation,* Foreign. *Constitutional Law,* Taxation of income of foreign corporation, Interstate commerce. *Interstate Commerce.*

The principal business of a corporation, organized under the laws of Maine and having a usual place of business in Boston in this Commonwealth, was the buying of milk from farmers, transporting it to Boston and there selling it by daily deliveries to retail dealers and consumers. About ninety per cent of such milk was purchased in States other than Massachusetts. The milk in the great majority of instances was delivered by the farmers to the employee at the train or to the corporation's milk station, whence it was shipped daily by railroad to Boston in cans of the corporation, which paid the freight charges. At Boston the milk was removed from the cans, pasteurized, put into other cans or bottles and distributed, chiefly by vehicles of the corporation, to its customers or to its own retail stores. The corporation also manufactured and sold certain other milk and dairy products both within and outside of Massachusetts. Upon a bill in equity by the corporation seeking the abatement of a tax upon its net income for the year ending January 31, 1918, assessed under St. 1918, c. 253, it was held, that

(1) By the provisions of § 3 of the statute, income derived by the corporation from sales of milk and other articles either outside of Massachusetts or by direct shipment from outside of Massachusetts to its customers within the Commonwealth was not subject to taxation;

(2) The corporation ceased to be engaged in interstate commerce as to the milk when, after its arrival in Boston, it changed the method of dealing with and disposing of it;

(3) The transactions with the milk after its arrival in Boston were domestic transactions, and net income derived therefrom was subject to the tax imposed by the statute;

(4) The statute did not impose a direct burden upon interstate commerce and violated no right secured to the corporation by the Federal Constitution.

BILL IN EQUITY, filed in the Supreme Judicial Court on February 4, 1919, under St. 1918, c. 253, § 4; c. 255, § 7, for the abatement of a tax assessed upon the plaintiff's income for the year ending January 31, 1918.

The suit was heard by *Carroll, J.,* upon an agreed statement of facts. Material facts are stated in the opinion. By order of the single justice, a final decree was entered dismissing the bill. The plaintiff appealed.

Material portions of St. 1918, c. 253, are as follows:

"Section 1. Every foreign corporation, as defined in section thirty-nine of Part III of chapter four hundred and ninety of the acts of nineteen hundred and nine, shall pay a tax to the Commonwealth computed upon the net income for its fiscal or calendar year next preceding, as hereinafter provided, upon which income such corporation is required to pay a tax to the United States. Each corporation subject to the tax imposed by this act shall render to the tax commissioner, under oath or affirmation of its treasurer or assistant treasurer, on or before the first day of July in the year nineteen hundred and eighteen, unless the fiscal year of the corporation for which it made return to the collector of internal revenue ended between the thirtieth day of April and the first day of July, both inclusive, in which case the said report shall be rendered by the corporation within sixty days after the date of the closing of its said fiscal year, a true copy of the last return made to the collector of internal revenue, of the annual net income arising or accruing from all sources in its fiscal or calendar year next preceding, stating the name and situation of the principal place of business of the corporation; the kind of business transacted, and a list of all subsidiary companies, if any, with the situation of the principal place of business of each; the gross amount of its income during the said year from all sources, and the amount of its ordinary necessary expenses paid out of earnings in the maintenance and operation of the business and properties of the corporation; such other information as may be requested by the United States treasury department for the purpose of ascertaining the total amount of net income taxable under the United States income tax act; the net income of the corporation after making the deductions authorized; the amount of taxes paid upon its income to the internal revenue department for the year next preceding the one for which such return is made. . . .

"Section 3. If any such corporation carries on business outside of this Commonwealth, or owns property beyond its jurisdiction, or is to any extent engaged in interstate or foreign

commerce, that portion only of its net income which is not derived from the said sources shall be apportioned to this Commonwealth and taxed hereunder. Each corporation, in connection with the return required by section one of this act, shall state in such form as the tax commissioner shall prescribe what portion or amount of its annual net income is apportionable to this Commonwealth, as provided in this section. A tax is hereby laid on every such corporation of one per cent of the said income to be assessed in the manner hereinafter provided. . . .

"Section 5. The tax imposed by this act shall be construed as a temporary emergency tax levied in addition to all other taxes imposed on foreign corporations, and not to any extent as a part of the system of taxation established by sections fifty-four to fifty-six, inclusive, of Part III of chapter four hundred and ninety of the acts of nineteen hundred and nine and acts in amendment thereof or in addition thereto."

*A. Lincoln,* for the plaintiff.

*W. H. Hitchcock,* Assistant Attorney General, for the Commonwealth.

RUGG, C. J. This is a bill in equity for the abatement of a tax assessed under St. 1918, c. 253. It is brought under St. 1918, c. 255, § 7, which is made applicable to taxes imposed under said c. 253, by § 4 thereof.

The plaintiff is a corporation organized under the laws of the State of Maine and having a usual place of business in Boston within this Commonwealth. Its principal business is the buying of milk in the country from farmers who make daily deliveries, the transportation of that milk to Boston and the sale of most of it there by daily deliveries to regular customers, who are either consumers or retail dealers. About ninety per cent of the milk so purchased originates in New York and in New England States other than Massachusetts. "In the great majority of instances the farmer delivers the milk either to the employee at the train which transports it to Boston" or to the plaintiff's milk station near the railroad station. The milk is shipped in cans belonging to the plaintiff, by whom the freight charges are paid, and is carried by railroad day after day on the same train. At Boston the milk is removed from the cans, pasteurized, put in other cans or bottles, and distributed forthwith

to its customers, chiefly from the plaintiff's wagons, or to retail milk dealers or through its own retail stores. The plaintiff, as incidental to its main business, also manufactures and sells other milk products both inside and outside of Massachusetts, and sells other dairy products. The amount of the net income of the plaintiff for the period in question, derived from sales of milk and other articles either outside of Massachusetts or by direct shipment to its customers inside the Commonwealth from outside its limits, is approximately fifteen and seven tenths per cent of its total net income. Confessedly this part of its income is not subject to the tax.

It is not contended that the method by which the tax was assessed was correct. Any error in this particular is said to have been due to insufficient information furnished to the tax commissioner by the plaintiff. But, however that may be, no controversy is made concerning the method of assessment, because it is agreed that if the plaintiff is made liable by St. 1918, c. 253, to a tax on the remaining portion of its net income after deducting said fifteen and seven tenths per cent, the bill is to be dismissed. Therefore, it must be assumed that the tax actually levied is at least not in excess of the amount justly due if the plaintiff is liable to taxation for the net income derived from that portion of its business which ends in selling from its stock in Massachusetts to customers receiving deliveries in Massachusetts, excluding all net income derived from sales outside Massachusetts and within Massachusetts by direct shipment to customers from other States.

The plaintiff contends that its income on which the tax is levied was derived from interstate commerce and hence is not taxable under the statute.

The title of St. 1918, c. 253, is "An Act imposing an additional tax upon the net incomes of foreign corporations." It is provided by § 5 that the tax "shall be construed as a temporary emergency tax levied in addition to all other taxes imposed on foreign corporations, and not to any extent as a part of the system of taxation established by sections fifty-four to fifty-six, inclusive, of Part III" of the general tax act providing for an excise measured by authorized capital but limited to $2,000. The excise imposed by these last sections is not here involved. See *Cheney Brothers Co.* v. *Massachusetts*, 246 U. S. 147; *Lawton Spinning Co.* v.

*Commonwealth,* 232 Mass. 28. The present statute requires that every foreign corporation shall pay a tax on the net income for its next preceding fiscal or calendar year "upon which income such corporation is required to pay a tax to the United States." By § 3 it is provided that "If any such corporation carries on business outside of this Commonwealth, or owns property beyond its jurisdiction, or is to any extent engaged in interstate or foreign commerce, that portion only of its net income which is not derived from the said sources shall be apportioned to this Commonwealth and taxed hereunder."

The present tax is not discriminatory against foreign corporations. An additional tax on domestic corporations quite as onerous in its terms was imposed by St. 1918, c. 255, taking effect on the same day as the statute here in question. See *American Printing Co.* v. *Commonwealth,* 231 Mass. 237.

The statute in imposing the additional tax expressly exempts from its scope interstate commerce and property outside the Commonwealth. It avoids the provisions which caused the statute under review in *International Paper Co.* v. *Massachusetts,* 246 U. S. 135, to be stricken down. It is indubitable that that part of the plaintiff's business which consists of transporting the milk bought outside this Commonwealth to Boston is interstate commerce. Interstate commerce comes to an end, however, when the milk thus transported in interstate commerce is delivered in Boston. The plaintiff then undertakes a new and distinct method of dealing with the milk, utterly different from interstate commerce. It removes the milk from the cans in which it has been the subject of interstate commerce and makes it a part of the common stock of merchandise within this Commonwealth. It then pasteurizes the milk, which is a subjection of it to heat for the purpose of inducing certain chemical changes. See *Commonwealth* v. *Boston White Cross Milk Co.* 209 Mass. 30. That process closely resembles manufacture as that word is applied to fabricated articles. It then puts the milk into other receptacles for purposes of sale and sells and delivers it chiefly from its own wagons or stores to retail customers and also to other retail dealers in or near Boston. The net income is derived wholly, so far as measured in cash receipts, from these retail or wholesale sales from the stock, which previously has become a part of the com-

mon stock of merchandise within the Commonwealth.    Interstate commerce has been utilized as a preliminary.    The part it played ended when the milk reached its terminus at Boston.    Thereafter every step in the transaction was an intrastate affair.    These sales were not interstate commerce.    They are as clearly domestic transactions as are sales by grocers or by any other retail dealers from local stocks of goods.    The dealing with the milk after arrival in Boston stands on the same footing as do the sales by the plaintiff of eggs, dairy products and canned goods.    In principle this business of the plaintiff is indistinguishable from the sales by any other retail or wholesale dealer who sells from a stock of goods bought in a foreign market, and brought to his store here by interstate commerce.    The exemption of the statute does not extend to the net income here taxed simply because at a preliminary stage the milk (subsequently mingled with the common bulk of property within the Commonwealth, pasteurized, rebottled and sold here at retail) was brought into the Commonwealth by interstate commerce.    If such transportation in interstate commerce affords immunity from taxation in whole or in part to the plaintiff, there appears to be no sound principle which would prevent the same immunity from attaching to every domestic retail dealer in respect of goods which in any stage between the constituent raw material and the finished product have been transported in interstate commerce.

The case at bar upon this point is indistinguishable from numerous decisions.    *United States* v. *E. C. Knight Co.* 156 U. S. 1.    *Cornell* v. *Coyne,* 192 U. S. 418.    *Bacon* v. *Illinois,* 227 U. S. 504, and cases there cited.    *Cheney Brothers Co.* v. *Massachusetts,* 246 U. S. 147.    *Arkadelphia Milling Co.* v. *St. Louis Southwestern Railway,* 249 U. S. 134.    *Wagner* v. *Covington,* 251 U. S. 95. *Marconi Wireless Telegraph Co. of America* v. *Commonwealth,* 218 Mass. 558.    As matter of statutory interpretation the net profits here taxed were within the terms of the taxing act and not within its exception.

The statute as thus construed violates no right secured to the plaintiff by the Federal Constitution.    It does not impose a direct burden upon interstate commerce.    The case upon this point appears to be within the authority of *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321.    In that case a general tax was laid

under the law of the State of Wisconsin upon the net income of a domestic corporation. It was attacked as an unlawful burden on interstate commerce on the ground that such income was derived in part from sales made to customers outside the State of goods manufactured by the corporation within the State and shipped either directly to such customers or indirectly through its branches in other States, and therefore that such income was derived from interstate commerce. It there was said at pages 326, 328, 329: "It is settled that a State may not directly burden interstate commerce, either by taxation or otherwise. But a tax that only indirectly affects the profits or returns from such commerce is not within the rule. . . . The correct line of distinction is so well illustrated in two cases decided at the present term that we hardly need go further. In *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, we held that a State tax upon the business of selling goods in foreign commerce, measured by a certain percentage of the gross transactions in such commerce, was by its necessary effect a tax upon the commerce, and at the same time a duty upon exports, contrary to §§ 8 and 10 of Article I of the Constitution, since it operated to lay a direct burden upon every transaction by withholding for the use of the State a part of every dollar received. On the other hand, in *Peck & Co.* v. *Lowe, ante,* 165, we held that the Income Tax Act of October 3, 1913, c. 16, § 2, 38 Stat. 166, 172, when carried into effect by imposing an assessment upon the entire net income of a corporation, approximately three-fourths of which was derived from the export of goods to foreign countries, did not amount to laying a tax or duty on articles exported within the meaning of Art. I, § 9, cl. 5 of the Constitution. The distinction between a direct and an indirect burden by way of tax or duty was developed, and it was shown that an income tax laid generally on net incomes, not on income from exportation because of its source or in the way of discrimination, but just as it was laid on other income, and affecting only the net receipts from exportation after all expenses were paid and losses adjusted and the recipient of the income was free to use it as he chose, was only an indirect burden. . . . Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrim-

ination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and general burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the States are not exempted by the Federal Constitution because they happen to be engaged in commerce among the States." In our opinion there is no distinction respecting a tax on net income in its bearing upon interstate commerce between the principles thus declared and those rightly applicable to the plaintiff upon the facts here disclosed, although it is a foreign corporation.

The contention that there is any valid distinction in this particular between a foreign and domestic corporation appears to us to be disposed of adversely to the contention of the plaintiff by *Shaffer* v. *Carter*, 252 U. S. 37, 57, decided since the argument of the case at bar. In that case a tax was imposed upon the net income of a non-resident individual derived from conducting business within the State of Oklahoma. It there was said: "It is urged that, regarding the tax as imposed upon the business conducted within the State, it amounts in the case of appellant's business to a burden upon interstate commerce, because the products of his oil operations are shipped out of the State. Assuming that it fairly appears that his method of business constitutes interstate commerce, it is sufficient to say that the tax is imposed not upon the gross receipts, as in *Crew Levick Co.* v. *Pennsylvania*, 245 U. S. 292, but only upon the net proceeds, and is plainly sustainable even if it includes net gains from interstate commerce. *U. S. Glue Co.* v. *Oak Creek*, 247 U. S. 321." No rational line of demarcation can be drawn in this particular in our opinion between a non-resident individual and a foreign corporation.

*Decree dismissing bill affirmed with costs.*