## LIPSON v. SOCONY–VACUUM CORPORATION.

## SAME v. STANDARD OIL CO. OF NEW YORK, Inc.

### Nos. 2960, 2961.

Circuit Court of Appeals, First Circuit.
March 9, 1935.

Edward O. Proctor, of Boston, Mass. (Withington, Cross, Proctor & Park, of Boston, Mass., on the brief), for appellant.

George R. Stobbs and Louie E. Stockwell, both of Worcester, Mass. (Stobbs, Hartwell & Stockwell, of Worcester, Mass., on the brief), for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

These cases come to this court on appeal from a judgment for the defendant in each case, the District Court having sustained demurrers to the plaintiff's declarations. All allegations of fact in the declarations on which the right of action depends are practically the same in both cases. The cases were argued together and may be disposed of in one opinion.

The actions were brought under sections 2, 3, and 4 of the Clayton Act (15 USCA §§ 13, 14, 15). Section 2 declares it to be unlawful for any person engaged in commerce, in the course of such commerce, to discriminate in price between different purchasers of commodities where the effect of such discrimination is to substantially lessen competition or tends to create a monopoly in any line of commerce. Discrimination in price between purchasers on account of quantity of goods sold or because of difference in cost of selling or transporting is permitted; and the provision of the section does not prevent a dealer from selecting his own customers in bona fide transactions and not in restraint of trade.

Section 3 prohibits any person in the course of such commerce from fixing any price on any merchandise or commodity on condition or with the understanding that the purchaser will not deal or use any such merchandise or commodity of a competitor of the seller where the effect of such agreement "may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

Section 4 provides that any violator of the above sections, or of any provision of the anti-trust laws shall be liable to any person injured in his business thereby in threefold damages suffered by him.

The grounds of the demurrer were:

"(1) That the plaintiff's declaration does not allege that the transaction complained of involved commerce between the several states."

"2. That the declaration does not state a cause of action under the statutes of the United States entitling the plaintiff to the relief prayed for."

"3. That the declaration is vague and indefinite in that it does not set forth the facts upon which the alleged illegal discrimination is based and does not set forth the dates upon which the illegal acts are alleged to have been committed."

The material allegations of fact, omitting those descriptive of the parties, are in substance as follows: The business of the defendant Socony-Vacuum Corporation is the production, refining, and marketing of petroleum and petroleum products, the principal item of which is gasoline, and involves the shipment and transshipment of petroleum and petroleum products in commerce among the several states. The business of the defendant Standard Oil Company of New York, Inc., is that of selling agent for the products of the Socony-Vacuum Corporation for the northeastern region of the United States. The business of the plaintiff is that of selling gasoline and petroleum products at retail in Boston.

Gasoline for the most part is produced in the United States at refineries operated by companies engaged in all branches of the petroleum industry, or by companies subsidiary thereto, or affiliated therewith. Gasoline is almost invariably sold under a trade-name or brand, in bulk, both at wholesale and retail, and is distributed at retail principally through service or filling stations. The defendant Socony-Vacuum Corporation, either directly or through an affiliate, markets its own production of gasoline at wholesale, and is also frequently engaged in retail marketing as well.

We now quote in full the paragraphs of the declarations on which the claim of unlawful discrimination is based:

"7. Gasoline is sold in bulk both at wholesale and retail and, except in rare instances, not in containers. By reason thereof its distribution requires transportation and storage facilities specifically constructed for that purpose. From refineries gasoline is distributed to the principal marketing centers in tank steamers and tank cars, *and there stored or trans-shipped by tank truck or tank wagon.* (Italics supplied.)

"8. Gasoline is distributed in wholesale quantities either in *tank cars for trans-shipment by the purchaser,* or in tank trucks or tank wagons to storage tanks at the purchaser's premises. Sales for delivery in tank cars are described as upon the tank car market; sales for delivery in tank trucks or tank wagons are described as upon the tank wagon market. Tank car prices are customarily lower than tank wagon prices by a substantial margin." (Italics supplied.)

"10. By reason of the fact that the marketing of gasoline requires special storage and transportation facilities, no company can sell in any territory where it does not have such facilities. Some companies extend their marketing activities throughout a large number of states, others market in a single state or in a few states.

"11. The defendant is, and Standard Oil Company of New York was, for many years engaged in selling gasoline throughout the northeastern region at wholesale to operators of service or filling stations, making delivery *both from tank car to trucks of the retailer, and by tank truck or tank wagon to the storage tanks at the station.* The one is, and the other was, engaged, also, in selling other petroleum products and in maintaining and operating in the same territory service and filling stations for the sale of gasoline and other products at retail to consumers. (Italics supplied.)

"12. Prior to the decision of the Supreme Court of the United States in Standard Oil Co. of New Jersey and others, v. United States, 221 U. S. 1, 31 S. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734, in 1911, Standard Oil Company of New York had a substantial monopoly of commerce in petroleum products, including gasoline, in the northeastern region. Thereafter, until the merger in 1931 it continued to be the largest single factor in commerce in petroleum products in that territory, and by reason thereof and of its prestige and the strategic location of its wholesale and retail stations continued to dominate that commerce. The merger with Vacuum Oil Company has tended to increase that control and dominance in Socony-Vacuum Corporation and the defendant over such commerce. The effect of the merger was to destroy the competition between the companies so combined."

216

"14. The plaintiff has for a number of years purchased 'Socony' gasoline and other petroleum products from Standard Oil Company of New York and from the defendant, and resold the same at retail at a filling station operated by him on Blue Hill Avenue in the Mattapan District of said Boston, and at other places in said Boston, in competition with filling stations operated by said Standard companies and with others independently operated.

"15. The defendant has discriminated in the prices charged by it for gasoline between the plaintiff and other purchasers for resale in the same territory and in competition with the plaintiff in the sale of gasoline at retail.

"16. The defendant has sold gasoline at wholesale to certain retailers making deliveries in tank cars at tank car prices, but it has refused to sell to the plaintiff, except by delivery by tank truck at tank wagon prices, unless he would agree that he would not deal in the gasoline and other commodities of competitors of the defendant. The plaintiff is and has been equipped to take delivery in tank cars and has frequently requested an opportunity to purchase gasoline from the defendant on that basis.

"17. The defendant has sold gasoline to other retailers for resale, and has fixed a price therefor substantially less than that charged the plaintiff, upon an agreement by the purchasers that they would not deal in the gasoline and petroleum products of competitors of the defendant.

"18. The effect of such discrimination in the price of gasoline between the plaintiff and other purchasers for resale was, by reason of the circumstances hereinabove related, to substantially lessen competition between the defendant and other refiners and wholesalers of gasoline.

"19. The effect of an agreement by the plaintiff not to deal in the gasoline and other commodities of competitors of the defendant would have been, by reason of the circumstances hereinabove related, to substantially lessen competition between the defendant and other refiners and wholesalers of gasoline.

"20. The effect of sales by the defendant upon an agreement by the purchasers that they would not deal in the gasoline and petroleum products of competitors of said companies, was, by reason of the circumstances hereinabove related, to substantially lessen competition between the defendant and other refiners and wholesalers of gasoline in the northeastern region, so called.

"21. The effect upon the plaintiff of said discrimination between him and other purchasers, and of the other practices of the defendant was to substantially lessen his competition in gasoline and other petroleum products with the stations operated by the defendant and by others in the same competitive territory, to impair his ability to compete, and to diminish his profits."

The issue on demurrer is whether the plaintiff has set forth in his declarations a sufficient cause of action against these defendants under the Clayton Act. The District Court ruled that he had not. It is conceded that the defendant in each action is engaged in interstate commerce. It is settled that the word "commerce" in each section of the Clayton Act refers to interstate commerce. The question then is, Has the plaintiff alleged sufficient facts and with substantial certainty which would as a matter of law warrant a finding that the defendant in each case has made sales in interstate commerce in which it has discriminated against the plaintiff in a manner which may substantially lessen competition in interstate commerce, or which tends to create a monopoly in any line of interstate commerce?

The declaration in each case is loosely drawn, and while the Massachusetts Practice Act does not require facts to be stated with the exactitude and certainty required at common law, it does require the necessary substantive facts to be stated "concisely and with substantial certainty." G. L. (Ter. Ed.) c. 231, § 7, cl. 2. The only facts alleged with substantial certainty are that the defendant Socony-Vacuum Corporation from its refineries distributes gasoline to the principal market centers in the northeastern region of the United States in tank steamers and in tank cars, and there stores it for transshipment in tank trucks or tank wagons to retail service stations; and in such territory the Standard Oil Company of New York, Inc., acts as its selling agent; that from its storage facilities the gasoline is distributed in wholesale quantities in tank cars for transshipment by the purchaser; or in tank trucks or tank wagons to storage tanks on the retailer's premises; and that the defendants have refused to sell to the plaintiff in tank cars at tank car prices, unless the plaintiff would agree to deal solely in the products of the defendants.

There is no allegation in paragraphs 7, 8, or 11 that either of the defendants deliver to local retailers in tank cars, but only that they deliver in wholesale lots in tank cars for transshipment by the purchaser. On the contrary, in paragraph 11 it is alleged that they make delivery to operators of filling stations, both from tank cars to trucks of the retailer, or by tank trucks or tank wagons to the storage tanks at the filling stations.

■ It is alleged, however, in paragraph 16 that the defendants have sold at wholesale to certain retailers, making deliveries in tank cars at tank car prices; but there is no allegation that such gasoline was delivered in the same tank cars in which it was shipped to Massachusetts from the refineries of the Socony-Vacuum Corporation, and were not filled from its storage tanks in Boston; nor is there any allegation that the plaintiff could not have obtained tank car lots on the same terms as they were sold to other retailers. Unless it is true that the gasoline is delivered in the same tank cars in which it is shipped into the state, and cannot be said to have become a part of the general mass of commodities within the state, the transactions were intrastate.

The facts on which the decision of the Supreme Court in United Shoe Machinery Corporation et al. v. United States, 258 U. S. 451, 42 S. Ct. 363, 66 L. Ed. 708; Standard Fashion Co. v. Magrane-Houston Co., 258 U. S. 346, 42 S. Ct. 360, 66 L. Ed. 653; Binderup v. Pathé Exchange, Inc., et al., 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308; Bedford Cut Stone Co. et al. v. Journeyman Stone Cutters' Ass'n of North America et al., 274 U. S. 37, 47 S. Ct. 522, 71 L. Ed. 916, 54 A. L. R. 791; and Local 167, International Brotherhood of Teamsters, etc., et al. v. United States, 291 U. S. 293, 54 S. Ct. 396, 78 L. Ed. 804, is based are not found in this case. With the exception of the Standard Fashion Case and the United Shoe Machinery Case, they were all brought under the Sherman Act (15 USCA §§ 1–7, 15 note).

In the Standard Fashion Case, the agreement restricting sales of other products than those of the Standard Fashion Company was made in New York, and was a part of the contract of sale to the purchasers—obviously an interstate transaction. The same, or a similar situation in effect, was found to exist in the United Shoe Machinery Case. In the Binderup-Pathé Exchange, Inc., the Bedford Cut Stone, Local 167, International Brotherhood Cases, and the case of Swift & Co. v. United States, 196 U. S. 375, 25 S. Ct. 276, 49 L. Ed. 518, it was found that there was a conspiracy or combination to restrain interstate commerce.

Here, according to the allegation in paragraph 7, gasoline is shipped from the defendant's refineries to Boston, not for delivery to any particular customer, but to be stored for sale to the public, or to any one who wants to buy upon its terms. There is no allegation that contracts of sale with local dealers are made at the refineries, or outside of Massachusetts, before shipment to Boston, or with intent to make special contracts with any particular local dealers. If any such facts exist, that tank cars are shipped from refineries to Massachusetts and are there sold and delivered to retailers in what might be termed the original package, they are not set forth in the declarations with substantial certainty.

■ Paragraph 15 does not allege discrimination in interstate commerce, and mere sweeping allegations in the language of the statute are not sufficient to put a defendant upon trial; nor does it appear from paragraph 15 alone that the discriminations therein alleged, even if in the course of interstate commerce, may not be those expressly permitted under section 2 of the act. Pierce Oil Corp. v. City of Hope, 248 U. S. 498, 500, 39 S. Ct. 172, 63 L. Ed. 381; Southern Railway Co. v. King, 217 U. S. 524, 536, 30 S. Ct. 594, 54 L. Ed. 868; Witherell & Dobbins Co. v. United Shoe Machinery Co. (C. C. A.) 267 F. 950.

From the allegations in paragraphs 16 and 17, the inference is unwarranted, we think, that any competitor of the plaintiff has been able to obtain gasoline in tank cars at tank car prices for retail sale, unless he was dealing only in the products of the Socony-Vacuum Corporation or would agree to do so. On the contrary, the only reasonable inference that can be drawn from facts set forth in these two paragraphs is that the plaintiff has been treated the same as all other customers of the defendants, viz., if they agreed to deal solely in products of the defendants, they could purchase gasoline in tank cars at tank car prices, or at a less price than if delivered in tank trucks or tank wagons. In other words, there is no averment of any facts with substantial certainty which warrants a conclusion that the plaintiff individually is being discriminated against at all.

■ The effect of such discrimination, it is averred in paragraphs 18, 19, and 20, was, by reason of the circumstances above related, to substantially lessen competition between the said Standard Oil Companies and other refiners. The only "circumstances above related" on which "such discrimination" is based, and which are stated with any degree of certainty, are contained in paragraphs 16 and 17, in which it is averred that the defendants have sold to other customers in tank car lots at tank car prices, and have refused to sell to the plaintiff in tank cars and at tank car prices, unless he would agree to deal only in the products of the defendants; and that the defendants have sold to other retail customers at a less price than to the plaintiff, but upon the condition that they would not deal in the products of other companies. The plaintiff, therefore, must rely on the facts alleged in paragraphs 16 and 17 as the basis of his claim of discrimination.

The plaintiff, however, has merely alleged in general terms in paragraphs 18, 19, 20, and 21 that the "effect" of the alleged discrimination and agreements described in paragraphs 16 and 17 was, or would be, to lessen competition between the defendants and their competitors; but whether in interstate commerce does not appear. Such averments, as the Supreme Court said in Southern Railway Co. v. King, 217 U. S. 524, 536, 30 S. Ct. 594, 597, 54 L. Ed. 868, "are mere conclusions"; and "if it be regarded as a conclusion of law upon the point which this Court must decide, it is not admitted by the demurrer. If it be taken to allege that facts exist that lead to that conclusion, it stands no better." Pierce Oil Corp. v. City of Hope, supra, at page 500 of 248 U. S., 39 S. Ct. 172.

■ The act was not intended to reach every remote lessening of competition, but only such acts as would probably substantially lessen competition, or disclose an actual tendency to create a monopoly in interstate commerce. Standard Fashion Co. v. Magrane-Houston Co., supra, page 357, of 258 U. S., 42 S. Ct. 360; B. S. Pear'sall Butter Co. v. Federal Trade Commission (C. C. A.) 292 F. 720.

■ The defendants are not dealing in a public necessity. They have the right in intrastate commerce, unless prohibited by the state, to sell or not to sell to any person and at any price, or upon any condition they see fit to impose, or in interstate commerce, so long as the probable effect of such sales will not substantially lessen competition in interstate transactions, or tend to create a monopoly in any line of interstate commerce.

The allegations in the declarations upon which the plaintiff relies to show sales or agreements in the course of interstate commerce, or of any acts of the defendants that may substantially lessen competition, or which may tend to create a monopoly in the sale of gasoline in interstate commerce, are too vague, indefinite, and insufficient to warrant such a finding as a matter of law. Baran v. Goodyear Tire & Rubber Co. et al. (D. C.) 256 F. 571, 574; Whitwell v. Continental Tobacco Co. et al. (C. C. A.) 125 F. 454, 64 L. R. A. 689. The only conclusion which can be reasonably drawn from the facts set forth in the declarations is that interstate commerce ended when the gasoline is received by defendants in Massachusetts for storage, and that sales and deliveries from storage thereafter made in Massachusetts to retail customers, are sales in intrastate commerce. Quincy Oil Co. v. Sylvester et al., 238 Mass. 95, 130 N. E. 217, 14 A. L. R. 111; H. P. Hood & Sons v. Commonwealth, 235 Mass. 572, 577, 127 N. E. 497.

If, however, the plaintiff claims that gasoline is sold and delivered in tank car lots by the defendants to retailers in Massachusetts in the same tank cars in which it is shipped into Massachusetts from the refineries, and only in case the purchaser shall agree to deal solely in the defendant's products, and that by refusing to sell in tank car lots at tank car prices unless the purchaser shall so agree, competition in interstate commerce may thereby be substantially lessened between the defendants and their competitors, or that it tends to create a monopoly in interstate commerce, we think he should be permitted to amend his declarations.

The judgment of the District Court in each case is vacated, provided the plaintiff files an amendment to his declarations within fifteen days from the date when the mandate is handed down; otherwise the judgment of the District Court in each case is affirmed with costs.