### ARTHUR v. KRAFT–PHENIX CHEESE CORPORATION.
#### No. 6040.

District Court, D. Maryland.
Oct. 18, 1937.

On Demurrer to Amended Declaration
Feb. 10, 1938.

Wallis Giffen and J. Stanislaus Cook, both of Baltimore, Md., for plaintiff.

Allan Sauerwein and Herbert Levy, both of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The declaration in this case appears to be based on Section 15, Title 15 of the United States Code, 15 U.S.C.A. § 15, which authorizes a civil suit by a person "injured in his business or property by reason of anything forbidden in the anti-trust laws". It has been demurred to.

The only facts (apart from conclusions of law) alleged are that the plaintiff (a Maryland citizen) 'for three years prior to January 1, 1934, was engaged in Baltimore City in the business of selling and distributing various commodities and in connection therewith was the sole distributor in Baltimore City and vicinity of cheese and mayonnaise products of the defendant, Kraft-Phenix Cheese Corporation (an Illinois corporation); and that on or about January 1, 1934, the defendant corporation arbitrarily and without reasonable justification or excuse refused to further supply the plaintiff with defendant's goods at the customary dealers' or distributors' discount; in consequence of which the plaintiff has lost the profits which he was theretofore realizing from the re-sale of that line of commodities.

It is further alleged in the declaration in very general terms and without specification of particular acts or facts, that this arbitrary refusal of the defendant to further sell the plaintiff goods at the customary dealers' discount was pursuant to a conspiracy "to restrain and damage or to destroy the trade of the plaintiff in violation of the Sherman Act of July 2, 1890"; and was also a discrimination "in price of the defendant's commodities between the plaintiff and other dealers and distributors of the defendant's products", in alleged violation of the Clayton Act of October 15, 1914, United States Code, Title 15, section 13, 15 U.S.C.A. § 13.

Viewed as a private civil suit under section 15 of Title 15 of the United States Code, 15 U.S.C.A. § 15, the dec-laration is clearly insufficient. It does not affirmatively and expressly or otherwise clearly show that the alleged conspiracy was one to unreasonably restrain *interstate commerce;* nor does it appear that the public interests were in anywise prejudiced by the defendant's activities; nor is it alleged that the price discrimination prohibited by section 13 of Title 15 had the effect to "substantially lessen competition or tend to create a monopoly in any line of commerce", which is an essential element in section 13. In fact, taking all the averments of the declaration together there is really nothing to indicate that the defendant's refusal to further sell the plaintiff at a discount resulted otherwise than from "its right to select its own customers and was not in restraint of trade". Federal Trade Commission v. Beech Nut Packing Co., 257 U.S. 441, 452, 42 S.Ct. 150, 66 L.Ed. 307, 19 A.L.R. 882; Great Atlantic & Pac. Tea Co. v. Cream of Wheat Co., D.C., 224 F. 566; Id., 2 Cir., 227 F. 46. And even though, as the declaration alleges, this right was exercised arbitrarily and unreasonably by the defendant, nevertheless it does not justify a suit under Section 15 unless the effect of the refusal was to substantially lessen competition and was in restraint of trade. Lipson v. Socony-Vacuum Corp., 1 Cir., 76 F.2d 213; Id., 1 Cir., 87 F.2d 265; Cudahy Packing Co. v. Frey & Son, 4 Cir., 261 F. 65; Frey & Son v. Cudahy Packing Co., 256 U.S. 208, 41 S.Ct. 451, 65 L.Ed. 892. Although the suit was not filed until December 9, 1936, the declaration does not indicate that it was framed in view of the recent amendment of June 19, 1936, Robinson-Patman Price Discrimination Act, 15 U.S.C.A. § 13, whereby section 13 was re-written and expanded, especially as the beginning at least of the discrimination complained of was several years before the amendment of 1936.

Taken as a whole the declaration discloses only what seems to be a private controversy rather than one affecting the public as such. It is well established that the principal purpose of enacting the Anti-trust Laws, 15 U.S.C.A. § 1 et seq., was to protect the public; and the right of an individual to sue for personal damages sustained is incidental and subordinate. That is to say, Congress was concerned with preventing activities in interstate commerce which were prejudicial to the public and therefore the scope of the Act even in authorizing the personal right of

private suit by a person particularly injured was only incidental to the main object and the private suits are maintainable only when the defendant's conduct prejudicially affects the public generally as distinct from purely personal or private damage. See Alexander Milburn Co. v. Union Carbide & Carbon Corp., 4 Cir., 15 F.2d 678, 680; Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885, 887; Eastman Kodak Co. v. Southern Photo Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684, and Binderup v. Pathe Exchange, 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308, especially relied on by plaintiff's counsel, are not applicable here. They were decided on proofs, not pleadings, and involved factual situations much more definite and detailed than anything even remotely suggested in the present declaration.

■ As the declaration shows that there is diverse citizenship of the parties and the amount in controversy exceeds $3,-000, exclusive of interest and costs, it is possible that the jurisdiction of the court might properly be invoked on the general ground of common law tort by the defendant against the plaintiff, apart from the Anti-trust Laws. However, it seems to be sufficiently clear from the declaration as drawn that this was not intended by the pleader and even if a good suit in tort could be spelled out from the declaration as drawn, nevertheless it is clearly subject to demurrer for duplicity in that in the latter event it includes in one count two entirely separate rights of action. Rice v. Standard Oil Co., C.C., 134 F. 464. And it is very doubtful whether the facts alleged in the declaration are sufficient to state a good case in tort generally, as no contract with the defendant is alleged. Knoche v. Standard Oil Co., 138 Md. 278, 113 A. 754; Knickerbocker Ice Co. v. Gardiner Dairy Co., 107 Md. 556, 69 A. 405, 16 L.R.A.,N.S., 746.

While the demurrer must be sustained, leave will be granted to the plaintiff to amend. In any amendment made the declaration should clearly and certainly indicate whether it is based on violation of the Anti-trust Laws or on the general law of tort. And in either case it will be necessary for the pleader to specify and particularize in much more detail than has now been done, the facts as distinguished from conclusions of law and general expressions of violations of law, in order to bring the case properly within section 15 of Title 15 of the United States Code, 15 U.S.C.A. § 15, or to state a good cause of action in tort based on diverse citizenship.

It is therefore ordered that the demurrer to the declaration is sustained with leave to the plaintiff to amend within ten days.

### Memorandum Opinion and Order Sustaining Demurrer to Amended Declaration.

In this case the plaintiff filed its declaration on the 9th day of December, 1936. A demurrer thereto was sustained in a memorandum opinion filed October 18, 1937, with leave to the plaintiff to amend. The amended declaration was filed October 25, 1937 and has also been demurred to by the defendant. The amended declaration consists of six separate counts, the first five alleging violations of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, and the sixth, a violation of the Clayton Act, 38 Stat. 730. The plaintiff claims $500,000 damages.

The demurrer to the original declaration was sustained for the following reasons:

(a) The nature of the case showed that it was essentially an alleged interference with the plaintiff's particular private business, and the public interests were not involved, as required in the case of a valid suit under the Sherman Act; nor was it alleged that the price discrimination prohibited by section 15 of Title 15 of the Code, 15 U.S.C.A. § 15 (the Clayton Act), had the effect to substantially lessen competition or tend to create a monopoly in any line of commerce, which is an essential element in section 13.

(b) It was not sufficiently alleged that the transactions were in interstate commerce.

(c) While the declaration apparently was based on the Sherman and Clayton Acts, there was the possibility that a common law tort was the basis of the suit; but if so, the declaration was duplicitous.

The amended declaration now alleges the transactions were in interstate commerce and removes the possibility of the suit being based on a common law tort by specifically and unequivocally alleging violations of the Sherman and Clayton Acts; and counsel for the plaintiff expressly disclaims any contention that the declaration

should be sustained as a suit at common law between parties of diverse citizenship.

In my opinion the demurrer must be sustained to the declaration as a whole as no one of its separate counts validly states a case under either the Sherman or Clayton Acts. Each count recites a single set of facts which, in the first count, is alleged to have constituted a conspiracy in restraint of trade; in the second count, a monopoly of trade; in the third count, an attempt to monopolize trade; in the fourth count, a combination to monopolize trade; in the fifth count, a conspiracy to monopolize trade, and in the sixth count, the only one based on the Clayton Act, price discrimination "substantially lessening the competition and tending to create a monopoly in said lines of interstate commerce."

The single set of facts and the only facts set out in each of the six counts of the declaration is as follows:

On January 1, 1934, and three years prior thereto, the plaintiff was engaged in Baltimore City and elsewhere in Maryland and in Pennsylvania, in selling certain food products including cheese and mayonnaise products manufactured and sold in interstate commerce by the defendant, the Kraft-Phenix Cheese Corporation of Illinois. The plaintiff was at that time a distributor in Baltimore City of some of the defendant's products, the plaintiff being the sole distributor in Baltimore City of the defendant's mayonnaise products, and one of several distributors of the defendant's cheese products. Both of these products of the defendant were sold by it under its own private brands, and of course naturally the defendant had a monopoly in its own manufactured products. About the same time one Carpel was also a distributor in Baltimore City of defendant's cheese products. It is, however, not alleged that either the plaintiff Arthur, or Carpel had any contract with the defendant and it appears that sales at least to the plaintiff, Arthur, were made only from time to time as orders were given by him therefor. As a distributor of defendant's products, the defendant sold them to him at a customary dealer's discount.

Now the only alleged wrongful acts are that the defendant corporation conspired "with one of its officers and two of its general sales managers and Harry L. Carpel, one of its distributors who was indebted to it, to force the plaintiff out of the plaintiff's lucrative business in the defendant's said cheese and mayonnaise products if the plaintiff should refuse to buy out said Carpel's business at and for a consideration of $10,000, or refuse to sell his said business in the defendant's said products to the said Carpel for the sum of $15,000"; and on the plaintiff's refusal to so either buy or sell, the defendant thereafter refused to sell to the plaintiff the defendant's products *at a dealer's discount*. It is alleged that in consequence of this refusal by the defendant to further sell the plaintiff at a dealer's discount the plaintiff has lost what to him was a profitable distributing business relationship with the defendant. This same set of facts is variously described in the several counts as, first, a conspiracy in restraint of trade, second, a monopoly of trade and, third, an attempt to monopolize trade, fourth, a combination to monopolize trade, fifth, a conspiracy to monopolize trade and, sixth, price discrimination with lessening competition. But this latter allegation as to violation of the Sheman and Clayton Acts is a mere legal conclusion of the pleader and there are no facts in any count of the declaration which tend to support the legal conclusion other than the single set of facts above mentioned. See also Alexander Milburn Co. v. Union Carbide & Carbon Corp., 4 Cir., 15 F.2d 678, 680.

It is true the declaration also alleges that the defendant corporation as now existing is the result of various corporate consolidations and mergers which, it is further alleged, were themselves for the purpose of monopolizing trade in the defendant's products. And it is also alleged that after the refusal of further sales at dealer's discount by the defendant to the plaintiff, the defendant attempted and endeavored to entice away divers of the plaintiff's employes and salesmen and in such way conspired with its employes and Carpel "to interfere with and restrain the established trade of the plaintiff not only in the products of the defendant but in the products of other manufacturers engaged in interstate commerce dealing with the plaintiff and whose products were dealt in by the plaintiff as aforesaid and the supply of merchandise to retailers in plaintiff's territory". The latter part of the allegation is not quite clear but neither of the additional allegations would seem to have any particular relevancy to the

case especially as it is not alleged that the enticing attempts were successful.

In my opinion the single set of facts alleged in the several counts of the declaration do not constitute in legal effect a violation of either the Sherman or the Clayton Acts, for the reasons pointed out in the opinion sustaining the demurrer to the original declaration. Wilder Mfg. Co. v. Corn Products Refining Co., 236 U.S. 165, 174, 35 S.Ct. 398, 59 L.Ed. '520; Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885, 889. In substance all that is alleged is that the defendant refused to further sell the plaintiff at a dealer's discount unless the plaintiff would buy out Carpel, who, it is alleged, was indebted to the defendant. Assuming that this alleged action of the defendant, apparently carried through by its sales managers or other employes, was arbitrary and unreasonable, nothing more appears in the present amended declaration than in substance appeared in the original declaration, to wit, that the defendant arbitrarily and without good reason refused further to sell its products to the plaintiff at a dealer's discount. The amended declaration, therefore, as well as the original declaration failed to state any violation of either the Sherman or Clayton Acts. Essentially what is complained of is a private wrong or common law tort in which the public interest is not involved. It is legally quite impossible to understand how the public interest could be concerned in this individual private controversy. There is nothing in the alleged facts to show that the motive of the defendant was to restrain trade or to lessen competition and certainly nothing to show that the alleged unreasonable demand on the plaintiff could possibly have the effect of lessening the competition, or of raising prices or even maintaining prices. Nor is it alleged in even the most general terms that the transaction had any effect whatever on the volume of the defendant's business or the prices at which its products were sold. It is quite impossible to understand how the alleged act complained of would tend to promote or increase the defendant's monopoly of its own product. Every manufacturer has naturally a complete monopoly of his particular product especially when sold under his own private brands, and no private controversy with a distributor could legally tend to increase that type of a natural monopoly. The

Sherman Act is, therefore, clearly not really involved. And if we assume that the defendant's refusal to further sell the plaintiff at a dealer's discount, that is to cut off the plaintiff as a distributor of its products, constitutes such a price discrimination as is comprehended by the Clayton Act, there is still nothing in the particular facts alleged to show a lessening of competition within the meaning of the Clayton Act. For all that the declaration alleges the discontinuance by the defendant of sales to the plaintiff may have been accompanied by the appointment of one or more other distributors; and the public's opportunity to buy the defendant's products may have been increased rather than lessened. The alleged unreasonable and arbitrary conduct of the defendant was an isolated action between the plaintiff and the defendant, and is not alleged to have been a part of any general plan or scheme affecting the public.

Counsel for the plaintiff in argument again stresses the applicability as precedents of the cases of Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684, and Binderup v. Pathe Exchange, Inc., 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308. And, although numerous other cases under the Sherman and Clayton Acts are also cited, he very frankly concedes that his case is not sustainable unless justified by those cases as precedents. After again examining the two cases, which were referred to in the former opinion, I still find them inapplicable to the plaintiff's case. Binderup v. Pathe Exchange, Inc., 263 U.S. 291, 301–304, 309, 311, 44 S.Ct. 96, 97, 68 L.Ed. 308, was a civil suit under the Sherman Act in which the court dealt with the sufficiency of the complaint. The plaintiff owned or operated moving picture theatres in Nebraska and was called an exhibitor. The defendants, a number of corporations and individuals, were engaged in manufacturing and distributing motion picture films throughout the United States. It was alleged that these distributors controlled the distribution of *all* films in the United States, and that the films could not be procured from others; that the Omaha Film Board of Trade, one of the defendants, "was organized for the purpose of enabling these distributors to control prices and dictate terms to their patrons in Nebraska and other states." '

The plaintiff had contracts with some of the distributors "but had refused to buy from others, and that thereby a spirit of hostility was aroused against him on the part of the latter who thereupon brought great pressure to induce those with whom he was dealing to cease doing business with him; that all the defendants in error thereupon unlawfully combined and conspired in restraint of trade and commerce among the several states with the purpose and intent of preventing him from carrying on his said business and with intent to ruin him;" that he was blacklisted, and the distributors with whom he dealt, under pressure, unlawfully cancelled his contracts and the plaintiff was therefore unable to procure films for his theatres. The court held the complaint sufficient but said: "It is doubtless true that each of the distributors, acting separately could have refused to furnish films to the exhibitor, without becoming amenable to the provisions of the act, but here it is alleged that they combined and conspired together to prevent him from leasing from any of them. The illegality consists, not in the separate action of each, but in the conspiracy and combination of all to prevent any of them from dealing with the exhibitor."

Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 367, 368, 47 S.Ct. 400, 401, 71 L.Ed. 684, was also a civil case under the Anti-Trust Act but was decided upon the proofs rather than on the pleadings. The plaintiff was a local dealer in Atlanta, Ga., in photographic supplies which it sold to photographers. The defendant was a manufacturer of photographic materials and supplies which it sold to distributors throughout the United States. It appeared that the defendant "had engaged in a combination to monopolize the interstate trade in the United States in photographic materials and supplies, and had monopolized the greater part of such interstate trade. This had been brought about by purchasing and acquiring the control of competing companies engaged in manufacturing such materials, and the businesses and stock houses of dealers; by restraining the vendors from re-entering these businesses; by imposing on the dealers to whom it sold goods restrictive terms of sale fixing the prices at which its goods could be re-sold and preventing them from handling competitive goods; and by other means of suppressing competition."

It appeared that the defendant with others had been enjoined in an equity suit in another district court brought by the United States over some violations of the Anti-Trust Act. It also appeared that the defendant in 1910, "having acquired the control of the stock houses in Atlanta which were in competition with the plaintiff and unsuccessfully attempted to purchase the plaintiff's business, had, in furtherance of its purpose to monopolize, thereafter refused to sell the plaintiff its goods at the dealer's discounts."

The evidence was held sufficient to show that the defendant's refusal to sell the plaintiff at the dealer's discount was with intent to monopolize the trade in photographic supplies and in pursuance thereof to own or control for its own interests the retail sale of such supplies, without competition from other dealers such as the plaintiff. It appears from the opinion of the case in the Circuit Court of Appeals, 5 Cir., 295 F. 98, 100, that in January 1910 the defendant's parent company purchased the Glenn Photo Supply Co., a retail store, in Atlanta, and shortly thereafter the defendant corporation refused to make further sales to the plaintiff at dealer's discount.

These two cases, one illustrating a restraint of trade, and the other a monopoly of trade, are very different from the case as made in the declaration here. The articles of trade here involved are cheeses and mayonnaise of which there is common knowledge that there are many makes and brands on the market. Although the declaration alleges that the defendant corporation is the result of several combinations of other corporations, there is no allegation of any effort or attempt to monopolize the market in cheese or mayonnaise products generally. Nor is there any allegation of any combination or conspiracy between two or more manufacturers of cheese and mayonnaise products to deprive the plaintiff of an opportunity to deal in cheese and mayonnaise of other manufacturers at dealers' customary discounts. The conspirators here named are a rather unusual group with respect to restraint or monopoly of trade as the conspiracy was said to be between the defendant corporation and its agents, and one Carpel, another local retail dealer. But so far as Carpel is concerned, it appears that he was rather a passive object of the conspiracy than an actor therein. Certainly it is not alleged that he did anything in furtherance of a con-

spiracy. And the inclusion of the defendant's agents in the alleged conspiracy would seem to be only the basis for a technical rather than a substantial charge of conspiracy because obviously the agents were acting only for the defendant corporation. And it may be noted that the agents and Carpel are not named as defendants in the case and no explanation is given of their non-joinder. It is not alleged in the declaration what was the motive, if any, which actuated the agents. If they had any motives personal to themselves in the matter, it is not alleged. If they had improper personal motives and combined to carry them out through the medium of the defendant corporation to the prejudice of the plaintiff, it is conceivable that a common law tort suit might lie against them; but it is difficult to see how that would constitute either restraint of trade or monopoly of trade on the part of the defendant corporation.

Nor are the facts in this declaration at all comparable to those in the Eastman case. There is nothing in the single set of facts here alleged from which there could be any reasonable inference that the defendant corporation was endeavoring to restrain or monopolize trade in these products. It is not here alleged, as appeared in the Eastman case, that the defendant had acquired or was desirous of acquiring a retail store in Baltimore for the sale of its products and the profit therefrom without competition from the plaintiff. On the contrary, what is alleged in the declaration seems to point very clearly to the fact that the motive of the defendant was simply to collect a possibly precarious debt from Carpel.

It is not generally desirable to decide cases of doubtful import on the pleadings only as by demurrer. But suits of this character involving alleged conspiracies to monopolize or restrain trade often lead to very protracted trials and it is not reasonable to subject either or both parties to the expense of a long trial when it fairly appears with reasonable clarity from the declaration that conceding all the facts therein well pleaded, there would have to be a directed verdict against the plaintiff; especially where, as here, we are dealing with a declaration which has been amended after full argument and considered opinion on the original declaration.

And as previously indicated above and also in the opinion on the first demurrer, the essential nature of the plaintiff's case is in the nature of a private tort rather than a public wrong with only incidental particular damage to the individual plaintiff. But plaintiff's counsel has expressly disclaimed that basis for the consideration of the suit which indeed is not possible under the declaration as drawn as it expressly and specifically is based on the Sherman and Clayton Acts.

It results that the demurrer to the declaration and to each count thereof must be and is hereby sustained.