**ABOUAF et al. v. J. D. & A. B. SPRECKELS CO. et al.**

No. 20385—L.

District Court, N. D. California.
March 8, 1939.

Roger A. Bramy, Herbert A. Leland, Marcel E. Cerf, and Robinson & Leland, all of San Francisco, Cal., for plaintiffs.

Morrison, Hohfeld, Foerster, Shuman & Clark, Chickering & Gregory, Frederick M. Fisk, Walter C. Fox, Jr., Pillsbury, Madison & Sutro, Orrick, Dahlquist, Neff & Herrington, Brobeck, Phleger & Harrison, Bacigalupi, Elkus & Salinger and Cooley, Crowley & Supple, all of San Francisco, Cal., and David D. Oliphant, Jr., of Oakland, Cal., for defendants.

LOUDERBACK, District Judge.

The plaintiffs havé filed a complaint, and an amended complaint against twenty four defendants, together with a number of "Does" to recover triple damages for an alleged violation of the Federal Anti-Trust Acts.

The amended complaint alleges: (1) That in 1936 the plaintiffs attempted to establish a local wholesale grocery business in Vallejo, California. (Paragraph 1.) (2) That each of the several defendants "* * * is engaged on a large scale in interstate or foreign commerce * * *". (3) That the defendants combined and conspired to restrain interstate commerce by agreeing to prevent plaintiffs from obtaining the articles which the defendants manufactured. That the supplying of their respective commodities to the plaintiffs required shipments in interstate commerce of such commodities. That the defendants agreed among themselves not to ship or sell such goods to the plaintiffs. (Paragraph 111.) (4) That certain defendants endeavored to cause wholesale producers not to sell to plaintiffs. (5) That by reason of the alleged combination the plaintiffs were unable to buy the commodities sold by said defendants, and that they were therefor damaged. (6) The amended complaint then states that the plaintiffs were forced to buy said staples of the grocery business at the same retail prices at which plaintiffs

sold to their retail grocery customers. (Paragraph V, page 17-18.)

Defendants demurred to the amended complaint, and an issue presented to the Court is whether or not the amended complaint pleads a cause of action.

Plaintiffs' right to sue, if any, is founded upon section 7 of the Sherman Anti-Trust Act, as amended, Act of July 2, 1890, c. 647, sec. 7, 26 Stat. 210, 15 U.S.C.A. § 15, which reads: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent * * * and shall recover threefold the damages by him sustained * * *".

The acts forbidden or declared to be unlawful by the Anti-Trust laws are to be found in sections 1 and 2 of the Sherman Anti-Trust Act, Act of July 2, 1890, c. 647, sections 1 and 2, 26 Stat. 209, 15 U.S.C.A. §§ 1 and 2. Virtue v. Creamery Package Co., 227 U.S. 8, 24, 33 S.Ct. 202, 57 L.Ed. 393.

Section 1 reads: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal. * * *".

Section 2 reads: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor * * *".

The only other anti-trust law which may be pertinent under the amended complaint herein is section 1 of the Robinson-Patman Act (Act of June 19, 1936, c. 592, section 1, 49 Stat. 1526, 15 U.S.C.A. § 13). The Section reads:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: Provided, That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered: Provided, however, That the Federal Trade Commission may, after due investigation and hearing to all interested parties, fix and establish quantity limits, and revise the same as it finds necessary, as to particular commodities or classes of commodities, where it finds that available purchasers in greater quantities are so few as to render differentials on account thereof unjustly discriminatory or promotive of monopoly in any line of commerce; and the foregoing shall then not be construed to permit differentials based on differences in quantities greater than those so fixed and established; And provided further,[1] *That nothing herein, contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade:* And provided further, That nothing herein shall prevent price changes from time to time where in response to changing conditions affecting the market for or the marketability of the goods concerned, such as but not limited to actual or imminent deterioration of perishable goods, obsolescence of seasonal goods, distress sales under court process, or sales in good faith in discontinuance of business in the goods concerned."

 The main purpose of the Anti-Trust Acts was to provide protection for the public from monopolies and restraint of trade; and the individual right of action was incidental and subordinate. A complaint to state a cause of action must show not only damages sustained by the individual plaintiff, but even more importantly, a violation of public rights prohibited by the Act. Therefore, it is not sufficient that the declaration shows a good cause of action at

---

[1] Italics for emphasis the Court's.

common law, for the action is wholly statutory. D. R. Wilder Mfg. Co. v. Corn Products Refining Co., 236 U.S. 165, 174, 35 S.Ct. 398, 401, 59 L.Ed. 520, Ann.Cas. 1916A, 118; Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885; Lynch v. Magnavox Co., 9 Cir., 94 F.2d 883.

The effect upon interstate commerce must be direct and not remote and must be the result of an intent to restrain interstate commerce, or there must be a substantial and actual restraint of interstate commerce. Foster & Kleiser Co. v. Special Site Sign Co., 9 Cir., 85 F.2d 742, 750; Coronado Coal Co. v. United Mine Workers, 268 U. S. 295, 45 S.Ct. 551, 69 L.Ed. 963.

Allegations in the amended complaint purporting to show or support the claim that interstate commerce was unlawfully restrained by the defendants are:

(1) "* * * all of the defendants * * * combined and conspired together and with all of the other defendants above named to restrain interstate commerce and trade * * *". (Paragraph 111, page 8, lines 17 to 22 of the said complaint.)

(2) "That this was accomplished by preventing and in concert agreeing to prevent plaintiffs from obtaining grocery commodities * * *" sold and distributed in interstate commerce by the defendants above named. (Paragraph 111, page 8, lines 22 to 28.)

(3) "All of said defendants wrongfully, unlawfully and contrary to the Act of Congress in such case made and provided, combined and conspired in restraint of trade and commerce among the several states with the purpose and intent to preventing and restraining the shipment and transmission in interstate commerce * * *" by the respective defendants. (Paragraph 111, page 8, line 28, to page 9, line 4.)

(4) "* * * pursuant to said combination and conspiracy in restraint of interstate commerce, goods were * * * sold and distributed in interstate commerce by the respective defendants * * *". (Paragraph 111, page 9, lines 4 to 10.)

(5) The supplying of the respective products of the defendants to plaintiffs for use in their business "* * * required the shipment in interstate commerce of * * *" the respective products manufactured and sold by defendants. (Page 9, line 19, page 10, line 19, etc.)

(6) That the combination and conspiracy was entered into "* * * with the purpose and intent of restraining interstate commerce * * *". (Paragraph 111, page 10, lines 20–31.)

The plaintiffs themselves are not alleged to have been engaged in interstate commerce; they allege intrastate activities, in conducting a wholesale grocery business. Therefore the alleged conspiracy was aimed at a local enterprise. And a conspiracy which is aimed at restraining a local enterprise and which only indirectly or incidentally affects and restrains interstate commerce is not within the purview of the Anti-Trust Acts. Lipson v. Socony-Vacuum Corp., 1 Cir., 76 F.2d 213; Lynch v. Magnavox Co., Inc., 9 Cir., 94 F.2d 883; Field v. Barber Asphalt Paving Co., 194 U.S. 618, 24 S.Ct. 784, 48 L.Ed. 1142; United States v. Patten, 226 U.S. 525, 33 S.Ct. 141, 57 L.Ed. 333, 44 L.R.A.,N.S., 325.

The principal is emphasized in the case of Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 551, 77 L.Ed. 1062, in which it was held that preventing structural steel work on buildings in New York did not violate the Anti-Trust Acts, notwithstanding the fact that all the steel used was imported from other States. The fact that the "restraint of interstate commerce was not an object of the conspiracy" and that the "prevention of the local use was in no sense a means adopted to effect such a restraint" presented a case in which the Anti-Trust Acts were not violated. It is therefore the aim of the alleged combination and not any incidental effect on interstate commerce which gives the character to a conspiracy.

In the case of Arthur & Son v. Kraft-Phenix Cheese Corporation, 26 F.Supp. 824, D.C.Maryland, February 10, 1938, vol. 3 C.C.H.Trade Regulation Service, par. 25107, somewhat similar facts appear. There the complaint was divided into counts for conspiracy in restraint of trade, for monopoly of trade and for price discrimination lessening competition and tending to create a monopoly. Each count recited the same set of facts, briefly that plaintiff distributed Kraft Cheese products in Baltimore City and so did one Carpel, that defendant conspired with Carpel to force plaintiff out of the business of dealing in defendant's products by refusing to sell to him at a dealer's discount. The court

makes statements there which could be adopted as findings in this case. The Court held: "There is nothing in the alleged facts to show that the motive of the defendant was to restrain trade or to lessen competition and certainly nothing to show that the alleged unreasonable demand on the plaintiff could possibly have the effect of lessening the competition or of raising prices or even maintaining prices. Nor is it alleged in even the most general terms that the transaction had any effect whatever on the volume of the defendant's business or the prices at which its products were sold" to the public. "It is quite impossible to understand how the alleged act complained of would tend to promote or increase the defendant's monopoly of its own product. Every manufacturer has naturally a complete monopoly of his own particular product especially when sold under his own private brands, and no private controversy with a distributor could legally tend to increase that type of a natural monopoly. The Sherman Act is, therefore clearly not really involved * * *. For all that the declaration alleges, the discontinuance by the defendant of sales to plaintiff may have been accompanied by the appointment of one or more other distributors; and the public's opportunity to buy the defendant's products may have been increased rather than lessened * * *".

In the case before this court, the plaintiff alleges that he was able to acquire the products involved, but had to pay a price which prevented his making a profit on retail sale. (Paragraph V, page 17, of the amended complaint.) The amended complaint shows no raising of prices or maintaining of prices by the defendants; it shows no effect on the volume of defendants' business, or on the prices at which its products reached the public; nor does it show any monopoly of the defendants' products, nor any unreasonable restraint on interstate commerce.

■ True it is alleged with emphasis and repetition that the defendants unlawfully combined and conspired to violate the law, and to restrain and monopolize the trade. But the alleged facts do not justify such conclusions of the pleader, or thereby state a cause of action. Foster & Kleiser Co. v. Special Site Sign Co., supra, Glenn Coal Co. v. Dickinson Fuel Co., supra.

■ I am therefore unable to conclude that the amended complaint has alleged a cause of action under either the Sherman Act or the Robinson-Patman Act, with such certainty and definiteness as to make it just and fair to require the defendants to answer the allegations of the complaint. Since suits involving alleged conspiracies to monopolize or restrain trade often lead to very protracted trials, it is not reasonable to subject the litigants to a long trial, when it fairly appears with reasonable clarity from the amended complaint that, conceding all the facts there pleaded, there would have to be a directed verdict against the plaintiff, especially where, as here, we are dealing with a pleading which has been amended after full argument. Arthur & Son v. Kraft-Phenix Cheese Corp., supra.

The demurrers, each with its document-number as it appears in the Clerk's docket of the case, are those of: J. D. & A. B. Spreckles Co. (95); Western States Grocery Co., Safeway Stores, Inc., Safeway Stores, Incorporated, J. K. Bird, (102); Nestle's Milk Products, Inc., Alpine Evaporated Cream Company (103); Albers Bros. Milling Co. (105); Carnation Milk Company, Carnation Milk Sales Company (107); General Foods Corporation, General Foods Sales Company, Inc. (111); California Packing Corporation (112); Borden Company (113); Pet Milk Sales Corporation (114); Campbell Sales Company, C. E. Cumberson Company (115); Kellogg Sales Company (118); California and Hawaiian Sugar Refining Corp., Ltd. (119); Leslie Salt Co. (120); Sperry Flour Company (121); United Grocers, Ltd., and Harvey Sorensen (122).

Therefore, upon the grounds stated, and upon all the grounds urged in the demurrers, the demurrers are sustained, without leave to amend.