## CAMFIELD MFG. CO. v. McGRAW ELECTRIC CO.

### Civil Action No. 954.

District Court, D. Delaware.

Feb. 28, 1947.

Thurman Arnold and Milton V. Freeman (of Arnold & Fortas), all of Washington, D. C., and Clair John Killoran (of Killoran & VanBrunt), of Wilmington, Del., for plaintiff.

Samuel E. Darby, Jr., of New York City, and E. Ennalls Berl and Henry Van der Goes (of Southerland, Berl & Potter), all of Wilmington, Del., for defendant.

LEAHY, District Judge.

1. Before arriving at the question of plaintiff's right to have the Michigan litigation enjoined, a reference to the factual background is necessary. The facts show defendant, soon after negotiations had commenced between the parties looking to a license agreement, stated its position that it desired to institute suit against plaintiff in a direct infringement suit, even though negotiations were to continue. Defendant then agreed to withhold the infringement suit upon plaintiff's promise not to file a declaratory judgment action during the pendency of the negotiations. Plaintiff denies the agreement was that no suit would be filed until after defendant was afforded an opportunity to file its infringement suit. Plaintiff says the agreement was only that no suit would be filed by either party during the pendency of the negotiations. There can be no doubt—all the parties agree—that there was an agreement relative to suit in esse. The fact is there is simply a disagreement as to the scope and the extent of the agreement as to what suit should throw the contestants into federal litigation.

After considering all the evidence and for present purposes, I resolve this difference against plaintiff. I find there was an agreement between the parties that plaintiff, in return for defendant's agreement not to file a direct infringement suit during the negotiations, agreed defendant would have the opportunity of first filing a suit for direct infringement. This is a finding somewhat analogous to a finding that plaintiff comes into court with unclean hands. This compels a decision that plaintiff is not entitled to the injunctive relief sought.

In arriving at this conclusion, I am not unmindful of and have given serious consideration to the teachings of Cresta Blanca Wine Co. v. Eastern Wine Corporation, 2 Cir., 143 F.2d 1012; and, more importantly, the several cases in this Circuit, Triangle Conduit & Cable Co. v. National Electric Products Corporation, 3 Cir., 125 F.2d 1008; Crosley Corporation v. Westinghouse Electric & Mfg. Co., 3 Cir., 130 F.2d 474; Crosley Corporation v. Hazeltine Corporation, 3 Cir., 122 F.2d 925, which protect the vigilant litigant from harassment from similar suits filed subsequently against him. Yet, in none of those cases was there an agreement that a plaintiff would not sue until after a defendant had an opportunity to file a suit for direct infringement.

At an early date the English and our courts, for reasons of economy of remedy and in order to prevent a party from being harassed with many similar suits in other jurisdictions, involving the same subject matter, concluded they had power and proceeded to hear the suit first instituted and enjoined the parties from proceeding in later ones.[1] So, too, those courts utilized by a party subsequent to the filing of the original suit have, even in the absence of injunction by the courts where the first suit has been instituted, imposed such a limitation voluntarily on themselves.[2] But, to obtain an injunction against a subsequently filed suit, a party must satisfy the first principles of equity that he has a right to such an injunction. In truth, if there is such a thing as a hierarchy of rights in our law today, this kind of right certainly has no

---

[1] A review and analysis of this historical judicial development may be found in the discussion of Judge Maris in Crosley Corporation v. Hazeltine Corporation, 3 Cir., 122 F.2d 925.

[2] E. g. this court in Lockhart v. Mercer Tube & Manufacturing Co., D.C., 53 F. Supp. 301.

superior status, because obviously it is based simply on convenience; it is not the real vindication of a right of substance as the law has come to recognize and protect such rights. And such a particular right could not be availed of by a plaintiff if, for example, he is the one who first breaks the agreement. And, the only reason to give a plaintiff such an injunction, under such circumstances, irrespective of his status before the court, would be some overriding question of public policy. In accordance with recent judicial utterance, determination of patent questions is peculiarly within the public interest; but it is just as current that no overriding question of public policy exists that patent issues must be determined in one forum rather than another. The venue statutes concerning patent litigation have fixed and determined that particular problem. Therefore, it must be manifest, a party who agrees on litigious priority and then ignores such agreement is not entitled to injunctive relief. It is silly to say he may take shelter behind a non-existent public policy.

As stated, I realize the dignity which must and should be afforded the rulings announced by the cases of Triangle Conduit & Cable Co. v. National Electric Products Corporation; Crosley Corporation v. Westinghouse Electric & Mfg. Co.; Crosley Corporation v. Hazeltine Corporation and Cresta Blanca Wine Co. v. Eastern Wine Corporation, supra. They hold the court of first acquisition of a cause has power to issue an injunction such as sought here, and —what is more important—in a proper case, *it is its duty to do so*. The judicial inquiry of the nisi prius judge in any given set of circumstances, then, is simply this: What is a proper case?

The conclusion here seems clear. I think this is an improper case in which to issue a preliminary injunction directed against the Michigan litigation; there was consideration for the agreement for plaintiff not to sue first. Defendant promised not to sue plaintiff as an infringer if plaintiff wished to negotiate but if negotiations took place plaintiff, in turn, was not to file a suit for declaratory judgment. From my view of the circumstances, the dealings between the parties had not yet completely chilled before plaintiff sprinted to the courthouse. If such performances are to receive jural approval, I do not wish to be the judge to exercise the imprimatur.

█ 2. Certain individuals who composed a partnership which was the predecessor of the plaintiff corporation, subsequent to the institution of the Michigan suit where they were joined, as stated, as defendants, filed a petition to intervene in the proceedings at bar in order to join plaintiff in challenging defendant's rights and thus to submit themselves to any claim defendant, here, may have against them. Of course, as to these parties the Crosley cases, supra, are directly applicable, for as to these individuals, the Michigan suit was the first action. By attempting to become parties to the Delaware action they would, in effect, become plaintiff parties to the later action. See Cresta Blanca Wine Co. v. Eastern Wine Corp., supra, for condemnation of such practice. Beyond that, the issues as against such individuals do not have identity in the two jurisdictions.

█ 3. Paragraphs 6 to 10 of the complaint, together with paragraph 17 alleging damages, are the ones which allege violation of the anti-trust laws. Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note; Clayton Act, 38 Stat. 730. This charge is based on (1) minimum sales prices fixed by defendant in its licenses which have issued to others and offered to plaintiff; and (2) boycotting of distributors—that is, refusal by defendant to sell its "Toastmaster" to distributors who sell plaintiff's electric toaster. Defendant admits its practice to make a condition to the grant of a license that a certain price be fixed in the sale of any of the devices manufactured under its patents; but it relies on United States v. General Electric Co., 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362, to support the validity of its action; and while it recognizes a licensee under a patent may attack validity to test the legality of a price fixing provision in the license agreement (MacGregor v. Westinghouse Electric & Mfg. Co., 67 S.Ct. 421, 424; Edward Katzinger Co. v. Chicago Metallic Mfg. Co., 67 S.Ct. 416, 424; Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165), it declares that although defendant has of-

fered plaintiff a license defendant has refused to accept it.[3] So, defendant says, plaintiff is not bound by any price fixing as may be accomplished by defendant's other outstanding licenses. Defendant simply says "Plaintiff may sell at any price it chooses." This being so, the question must be faced: How can plaintiff be damaged? As to this precise inquiry, the law seems to be settled.

Where there is a violation of the anti-trust laws, a private plaintiff, in contradistinction to the government, must be subject to measurable damages, i. e., there must be alleged detailed damage to the individual, resulting from acts of a defendant which constitute violation of the statutes; and, further, the complaint must allege facts from which a court can determine whether there has been a violation. See Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885. Cf. Arthur v. Kraft-Phenix, D.C., 26 F.Supp. 824, 825.

Plaintiff in the case at bar obviously is free to sell its product to the public through retail or distributor outlets at either above or below the price fixed by defendant in its relations with its other licensees. I fail to see in what way, then, plaintiff can be damaged.

4. Likewise, I think the allegations directed to boycotting of distributors are insufficient. There is no charge defendant has absorbed all distributors in this country or controls such a high percentage as to fall within the condemnation of United States v. Aluminum Company of America, 2 Cir., 148 F.2d 416. The complaint simply is defendant will not do business with plaintiff's distributors. In general, it seems a necessary part of our business mores for a manufacturer to have free selection in dealing with its distributors. Upon the recognition of this fact, why may he not refuse to do business with one who deals in a closely competitive product? Looking at the reality of our economy, I have never seen a distributor of Ford automobiles, for example, also distribute a car of another competitor within the same price range, such as the Chevrolet; nor does McKesson & Robbins distribute the drug supplies of Park-Davis; etc. It has been said (under circumstances which have exceptions[4]) the anti-trust laws do not restrict the right of a manufacturer freely to exercise its own judgment as to the parties with whom it shall deal. United States v. Colgate & Co., 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992, 7 A.L.R. 443; United States v. Parker-Rust-Proof Co., D.C., 61 F.Supp. 805, 812; and, as a corollary, the anti-trust laws to be applicable to any given situation must be concerned as to whether the alleged or proven restraints present are unreasonable. E.g., United States v. Joint Traffic Ass'n., 171 U.S. 505, 568, 19 S.Ct. 25, 43 L.Ed. 259; Standard Oil Co. v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A., N.S., 834, Ann.Cas. 1912D, 734; United States v. American Tobacco Co., 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663; Chicago Board of Trade v. United States, 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683; Appalachian Coals, Inc. v. United States, 288 U.S. 344, 53 S.Ct. 471, 77 L.Ed. 825; Sugar Institute, Inc. v. United States, 297 U.S. 553, 56 S.Ct. 629, 80 L.Ed. 859; Apex Hosiery Co. v. William Leader et al., 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044. The few and vague paragraphs in the complaint devoted to the phase of alleged anti-trust violation are defective. Such charges are, I believe, insufficient to set forth a private cause of action for violation of such statutes.

In accordance with the views as expressed: (1) Plaintiff's motion to enjoin further prosecution of the Michigan action should be denied; (2) the prayers of the petition for intervention should be denied; and (3) the cause of action devoted to alleged violations of the anti-trust laws

---

[3] The government may not attack the validity of a patent in an anti-trust suit, United States v. United States Gypsum Co., D.C., 53 F.Supp. 889. No authority has been referred to which states a private party should be permitted to do so, with the exception, of course, of the situation envisaged by Sola Electric Co. v. Jefferson Electric Co., supra, and other cases cited.

[4] E. g., look at the writer's views, as expressed in William Goldman Theatres v. Loew's Inc., et al., 3 Cir., 150 F.2d 738.

should be dismissed. Jurisdiction of the plaintiff's declaratory judgment action with respect to its alleged infringement and validity of defendant's three patents will be retained by this court until the Michigan suit terminates in a decree; but, if no action is taken with respect to the Michigan suit the case at bar can move forward to meet the questions of infringement and validity upon the application of either party. In the meantime, those questions will rest here.

Defendant's counsel may submit a proposed form of order after notice.