**DUBLIN DISTRIBUTORS, Inc. v. ED-WARD & JOHN BURKE, Limited, et al.**

United States District Court
S. D. New York.

Dec. 29, 1952.

**126**

Mr. and Mrs. Everett Frooks, New York City, for plaintiff. Isidor Unger, New York City, of counsel.

Hamlin, Hubbell & Davis, New York City, for defendants. Emerson F. Davis, New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

The defendants have moved as follows:

(1) To dismiss the complaint herein for failure to state a claim upon which relief can be granted;

(2) For an order directing plaintiff to serve an amended complaint stating its claim in separate counts;

(3) For a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, 28 U.S.C.

▐ Plaintiff's complaint alleges an action pursuant to the Sherman and Clayton Acts, Title 15 U.S.C.A. §§ 2, 14, 15, based on the following facts: Plaintiff is a New York corporation engaged in the business of a wholesale malt beverages dealer under authority of the Alchohol Beverage Control Authority of the State of New York; the defendants are New York corporations and defendant The Arthur Guinness Son & Co., Inc. (hereafter "Guinness") is a wholly owned subsidiary of defendant Edward and John Burke, Limited (hereafter "Burke"); the plaintiff has since 1934 distributed a malt beverage known as Guinness Stout, in substantial quantity. It is alleged that subsequent to May 1949, Guinness Stout was brewed in Long Island City, New York by Guinness instead of being brewed in and imported from Ireland, as previously; that Guinness sold the Stout "throughout the United States" through Burke, as distributor. Evidently some of plaintiff's customers desired Stout made in Ireland, and hence plaintiff started importing Beamish Irish Stout, in June, 1950. It is further alleged that the defendants did not like plaintiff's dual representation and threatened serious consequences unless plaintiff would discontinue representing Beamish Irish Stout. Plaintiff refused to discontinue and the defendants "with the aim, design and intent of monopolizing the sale of stout in the United States, and in direct violation of the Anti-Trust Laws of the United States, embodied in the Sherman and Clayton Acts", notified plaintiff and its customers that plaintiff no longer represented the defendants as a distributor of Guinness Stout. Plaintiff then alleges damages.[1]

The Court, after extensive and repeated examinations of the complaint, is of the opinion that it is insufficiently clear or detailed to enable the defendants to answer.

▐ First, the plaintiff should set forth its claims under the Sherman and Clayton Acts in separate counts. Had this been done in separate paragraphs the Court would have held such sufficient under the authority of Lowe v. Consolidated Edison

---

1. Despite the liberality and flexibility of Rule 8(a) of the Federal Rules of Civil Procedure, 28 U.S.C., requiring but "a short and plain statement of the claim showing that the pleader is entitled to relief", proper pleading in a private anti-trust suit requires a statement of facts, upon which the cause of action is founded, considerably more extensive than that required in a simple negligence or contract action. Bader v. Zurich General Accident and Liability Insurance Co., D. C.S.D.N.Y.1952, 12 F.R.D. 437; Beegle v. Thomson, 7 Cir.,1943, 138 F.2d 875, certiorari denied, 1944, 322 U.S. 743, 64 S.Ct. 1143, 88 L.Ed. 1576; Pastor v. American Telephone & Telegraph Co., D. C.S.D.N.Y.1940, 76 F.Supp. 781; Westmoreland Asbestos Co. v. Johns-Manville Corp., D.C.S.D.N.Y.1939, 30 F.Supp. 389, reargument granted D.C., 32 F.Supp. 731, affirmed 2 Cir.,1940, 113 F.2d 114.

Co., D.C.S.D.N.Y.1940, 1 F.R.D. 559; but such is not the case. Since an amended complaint must be filed, separate counts should be stated for greater clarity.

■ The reason for separately stating these counts is that the requirements for stating a claim differ under these Acts. See, e. g. Antitrust Enforcement by Private Parties; Analysis of Developments in the Treble Damage Suit, 61 Yale Law Journal 1010, 1015–16 (1952). A mere reading of the Sections involved shows the distinction. Suit under the Sherman Act is based on the damage caused by a

"* * * person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations * * *." Title 15 U.S.C.A. § 2;

whereas the Clayton Act gives one a right of recovery against those violating the following provision:

"*Section 14. Sale, etc., on agreement not to use goods of competitor*

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in

any line of commerce. Oct. 15, 1914, c. 323, § 3, 38 Stat. 731."

Hence, in answering a complaint based on these acts, a defendant has a right to know on which facts the plaintiff relies in pleading a cause under the respective Acts, in order that he might reply thereto.

■ Secondly, to prevail in a treble damage action under the Sherman Act, a private litigant must allege and prove (a) a violation of the Act, and (b) damage to the plaintiff proximately resulting from the acts and conduct which constitute the violation. Myers v. Shell Oil Co., D.C.S.D. Cal.1951, 96 F.Supp. 670. A general allegation of the forming of such a combination or conspiracy with resulting injury to the public and to the plaintiff is not enough. It is essential that the complaint allege facts from which it can be determined as a matter of law that by reason of intent, tendency, or the inherent nature of the contemplated acts, the conspiracy was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce. Wilder Mfg. Co. v. Corn Products Refining Co., 1915, 236 U.S. 165, 35 S.Ct. 398, 59 L.Ed. 520; Myers v. Shell Oil Co., supra, cf. Bader v. Zurich General Accident and Liability Insurance Co., supra. While an examination of plaintiff's complaint sufficiently shows damage to the plaintiff, the element of public injury is insufficiently spelled out, if such element exists. Plaintiff's general allegations of the defendants' aim, design and intent of lessening competition and monopolizing the sale of stout in the United States (Complaint pars. 19, 21, 23) are not enough. Cf. Myers v. Shell Oil Co., supra. As the complaint now reads, it seems to allege merely a permissible refusal to do business with one dealing in a closely competitive product [Cf. Camfield Mfg. Co. v. McGraw Electric Co., D.C.Del.1947, 70 F.Supp. 477; Brosious v. Pepsi-Cola Co., 3 Cir., 1946, 155 F.2d 99,] rather than a conspiracy to violate the anti-trust laws resulting in public injury. The alleged discontinuance of plaintiff as a medium of distribution of defendants' product might have left the public unaffected. Facts

spelling out public injury should be pleaded in the amended complaint. Absent the facts of public injury, it is difficult to distinguish this case from the case of Brosious v. Pepsi-Cola Co., supra, relied on by the defendants, which case reiterates the right of a trader engaged in a strictly private business, freely to exercise his discretion as to the parties with whom he will deal. And this right, it is held, is not affected one way or another by the interstate or intrastate character of the commerce involved.

The Brosious case also considered what constituted interstate or foreign commerce for a valid cause of action under the antitrust laws. Brosious held that interstate commerce was not affected since the interstate movement of the defendant's product had stopped and its controversy with plaintiff related solely to intrastate sales.

In this case it does not appear that there is any movement of the defendant's product in interstate commerce insofar as the plaintiff is concerned. Guinness Stout is produced in New York State and sold to plaintiff in New York by Burke for New York distribution only (a fact spelled out only in plaintiff's brief in opposition to this motion). As such it would appear that the doctrine of the Brosious case is applicable. However, without deciding, it may be that plaintiff's allegations of the effect of the alleged acts of the defendants on the foreign commerce in Beamish Irish Stout is sufficient in light of the broadening liberality of present day interpretations of federal commerce power. See Antitrust Enforcement by Private Parties, supra, 61 Yale Law Journal at pp. 1013–16.

One further point; the complaint is confusing as to the transition date from imported Guinness Stout to the local variety. "March, 1948", "May, 1949", "the year 1947" are all mentioned (Complaint, pars. 10, 12). This requires clarification in the amended complaint.

Defendants' motion for an order directing plaintiff to serve an amended complaint separately stating its claims and making said claims more definite and certain is granted. The motion to dismiss for failure to state a claim upon which relief can be granted is denied, with leave to renew said motion after the filing of the amended complaint.

Settle order on notice.