**HUNTER DOUGLAS CORP.**

v.

**LANDO PRODUCTS, Inc.**

**LANDO PRODUCTS, Inc.**

v.

**HUNTER DOUGLAS CORP.**

No. 13372.

United States Court of Appeals,
Ninth Circuit.

Aug. 18, 1954.

Donovan O. Peters, Charles F. Hutchins, Jr., Sherman & Peters, San Francisco, Cal., Pennie, Edmonds, Morton, Barrows & Taylor, New York City, of counsel, for plaintiff-appellant.

Flehr & Swain, Julian Caplan, San Francisco, Cal., for defendant-appellee.

Before BONE, ORR and LEMMON, Circuit Judges.

LEMMON, Circuit Judge.

There are two appeals before us. Hunter Douglas Corporation, hereinafter referred to as Hunter, appeals from that portion of a judgment which decreed that the claims in patent No. 2,503,824 are not infringed by Lando Products, Inc., and that said claims are invalid. Lando Products, Inc., hereinafter referred to as Lando, appeals from a dismissal of its counterclaim.

*The Patent Controversy*

Letters patent were issued to Hunter as assignee of the inventors on April 11, 1950. The inventors perfected a process of trimming the edges of aluminum strips used in Venetian blinds so as to minimize or eliminate cracks which had heretofore been found in the finished product after rolling the strips. Application was made for a patent covering the process and the apparatus used. All of the claims were rejected because of prior art patents. On appeal the Board of Patent Appeals sustained the rejection of the claims covering the apparatus but allowed two claims covering the process. Claim 1, as stated in patent No. 2,503,824, reads as follows:

"The method of producing a thin strip of metal having a thickness which is a small fraction of its width and having smooth edges requiring no metal-finishing operation which comprises starting with a strip of material of approximately the desired finished width but of substantial thickness, removing from the marginal edges of the starting strip any irregularities extending transversely across said edges by making a shaving cut along said marginal edges by a cutting action which proceeds longitudinally along the edges of said strip, and then rolling said starting strip in a series of rolling steps to effect a substantial reduction in the thickness of the strip to a small fraction of the original starting strip thickness."

The second claim is substantially the same as the first but with this addition,

"and interposing between two of the initial rolling steps a second shaving step to remove any irregularities in the edge of the strip which escape removal in the first shaving operation".

Rolling of metal from a substantial thickness to lesser thickness is old. Likewise the trimming of edges of metal is old. Conceding this, counsel for Hunter stated his position thus, "but no one has ever done these two things in the order in which they are done in the process of the patent in suit, for the purpose of overcoming the same definite problems which faced the inventors here; namely, preventing the aggravation of these minute irregularities which are originally present in the strip."

The method so used produces a finished metal slat having a thickness a small fraction of its width with smooth edges requiring no finishing operation. This is accomplished by removing irregularities from the marginal edges of the starting strip, followed by a series of rolling operations to effect the reduction in thickness.

The severity of edge cracking was proportioned to the roughness of the starting edge. When the rolling continued to reduce the thickness of the strip the irregularities on the sheared edge became deep edge cracks. It is claimed that prior to the invention there was no known process of producing thin aluminum strips for Venetian blind slats from starting stock which did not require treatment of the edges after rolling.

Lando defenses are invalidity, asserting public use by Hunter of the method, public use thereof also by California Cold Rolled Steel Corporation, anticipation by and lack of invention over the prior art, and that claims cover only the function of the apparatus. Lando also denied infringement.

We deem our ruling upon the defense that the patent is invalid for want of invention over the prior art to be dispositive of Hunter's appeal. That question alone will be considered on its appeal.

The Court found the Forrester patent No. 222,483, and the Webster patent No. 670,352 each disclosed a method of edge trimming followed by rolling which is the equivalent of the method defined in the claims of the patent in suit. It further found that the California Cold Rolled Steel Corporation had as early as 1939 used the same method. The Court concluded that the adaptation by the inventors of the Hunter patent of the method so disclosed did not involve more than the exercise of ordinary mechanical and engineering skill and knowledge and did not require invention.

The witness Klenz, a mechanical engineer in Lando's employ, fashioned two pairs of cutting tools or cutters in accordance with the Webster disclosure and mounted them upon the accused machine at the same places where Lando mounts its own cutters. He testified that thereafter his mill ran approximately 30,000 feet of material and that it operated "exactly the same as it operates, in a normal manner, the way we operate all the time", and that the finished strip and "the same good edge that we get in our own production". The Court was thus fortified in its finding that the edge trimmers disclosed by the Webster patent had utility and that the trimmers of Lando's device performed in substantially the same way.

The Forrester patent disclosed an invention for the carrying by rollers past surface-trimming knives, also between reduction-rollers for finishing the surfaces of metal strips. It included an edge-trimming mechanism consisting of knives pivotally mounted with the cutting edges toward the edges of the strip, and revealed reducing of thickness before the edge trimming.

Fred L. MacQuarrie testified that California Cold Rolled Steel Corporation, of which he was president, specialized in rolling metal to meet the particular requirements of customers and that in 1939 he devised a machine with a cutting tool on each side thereof immediately in front of each mill. The cutting tools.

took off a shaving from each edge. He had worked to overcome the problem of edge cracking. He found that the cracking was aggravated by subsequent rolling and that the initial edge cracks were produced by the cutting. The remedy he concluded was in elimination of the incipient cracks. In 1940 he made improvements to the machine in order to control the depth of the cut. He employed it to a limited extent in the production of steel Venetian blind slats.

The evidence fully sustains the Court's finding that MacQuarrie publicly used the method several years prior to the application for the instant patent.

■ In order to be patentable the combination must qualify as an "invention". As we said in Kwikset Locks v. Hillgren, 9 Cir., 1954, 210 F.2d 483, 486:

"In the circumstance where a patent is sought on a combination of devices or processes known to the prior art, the concept of invention remains elusive. It has been said that, in order for the combination to be considered a patentable invention it must 'perform some new or different function—one that has unusual or surprising consequences.' Photochart v. Photo Patrol, 9 Cir., 1951, 189 F.2d 625, 627; Grinnell Washing Machine Co. v. E. E. Johnson Co., 1918, 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. There is no invention in a 'mere *aggregation* of a number of old parts or elements', nor in the *accumulation* of old devices which do not in some way exceed 'the sum of its parts'. (Emphasis ours.) Moreover, a truly inventive combination must create what had not before existed or bring to light what lay hidden from vision in a way which can be distinguished from 'simple mechanical skill.' A mere advance in efficiency and utility is not enough to convert a non-inventive aggregation into a patentable combination.

"The Supreme Court has recently considered the problem of patentable combinations and has established certain criteria and standards which the lower federal courts must apply in determining whether a combination patent is valid. The Supreme Court directs us to 'scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, * * * obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men.' Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra." [1]

The rolling operation in the Hunter invention is to thin the strip. That is true of all rolling operations. The shaver is designed to trim the edges. Likewise, that is true of all shavers. Passing the strips through a number of rolls was known. No new or different function is disclosed. The method in the patent was used prior to the invention by the patentees and was anticipated by the Webster and Forrester patents.

■ Accordingly, we agree with the Court below that the patent in suit is invalid for want of invention over the prior art.

*The Counterclaim*

We turn now to Lando's counterclaim. Lando alleges that Hunter violated the Federal Antitrust Laws and that as a result of this violation Lando suffered injury to its business and prop-

---

1. See also, Jacuzzi Bros. Inc. v. Berkeley Pump Co., 9 Cir., 1951, 191 F.2d 632, 636–637, and Berkeley Pump Co. v. Jacuzzi Bros. Inc., 9 Cir., 214 F.2d 785; Thys Co. v. Oeste, D.C.Cal.1953, 111 F. Supp. 665, 671–672.

erty. Damages and an injunction are prayed for. See 15 U.S.C.A. §§ 15 and 26.

The violation charged is that, during the period from the middle of 1949 to the middle of 1950, Hunter, being the only manufacturer of patented plastic Venetian blind tape, as a condition of sale of such tape required purchasers to buy unpatented aluminum Venetian blind slat stock. It is further alleged that Lando, which makes aluminum slat stock but not tape, thereby lost sales of slat stock. In other words, illegal tie-in sales are alleged as the substance of the counterclaim.

There is an irreconcilable inconsistency between Finding No. 22, on the one hand, and Findings Nos. 25 and 26, on the other hand. The text of the findings in question follows:

"(22) Assuming that the *alleged* tie-in sales were clearly proved, *which they were not*, and that the Defendant lost customers thereby, there is no showing that Defendant's plant could have handled additional orders."

"(25) In May, 1949, shortly after the plastic tape (was) put on the market, Plaintiff instructed its salesmen to retrict the sale of tape to those who purchased aluminum slat stock from Plaintiff, and this instruction was subsequently repeated.

"(26) Customers of Plaintiff were told both orally and in writing that it was necessary to purchase slat stock from Plaintiff in order to get plastic tape. Several potential customers of Defendant refused to purchase Defendant's slat stock because consumers demanded plastic tape and in order to get the tape it was necessary to buy the slat stock from Plaintiff." (Emphasis supplied.)

■■ In Finding No. 22, we are told that the "alleged" tie-in sales were *not*

"clearly proved". Findings Nos. 25 and 26, on the other hand, set forth classical examples of tie-in.

■■ Furthermore, there should be a clear statement of whether or not there were any tie-in sales. The oblique and incidental assumption regarding such "alleged" sales, in Finding 22, is not an acceptable substitute for a definite and forthright Finding of Fact. Unless there were actual *sales*, there was no violation of 15 U.S.C.A. § 14. See Nelson Radio & Supply Co. v. Motorola, Inc., 5 Cir., 1952, 200 F.2d 911, 914–916, certiorari denied, 1953, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356, and Leo J. Meyberg Co. v. Eureka Williams Corporation, 9 Cir., 215 F.2d 100.

■ Faced with similar situations, this Court has repeatedly followed the practice of remanding the case to the trial court for consistent or otherwise proper findings.[2] Such a procedure is here clearly the desirable one.

The Findings of Fact contain no statement as to whether Lando has been damaged by any alleged violations of the Antitrust Acts, as averred in the Counterclaim. Conclusion of Law No. 8 sets forth that Lando has not established that it has been so damaged, but a Conclusion of Law should not take the place of a Finding of Fact. The District Court is hereby directed to make a Finding of Fact on the question of damages, if any, suffered by Lando on its Counterclaim.

Accordingly, that portion of the judgment which holds the patent to be invalid for want of invention, is affirmed. The portion of the judgment dismissing the counterclaim is vacated, and the case is remanded to the District Court with directions to enter consistent Findings of Fact and Conclusions of Law on the issues of the existence of tie-in sales and the damages, if any, suffered by Lando on its Counterclaim.

Affirmed in part, vacated in part, and remanded.

2. Paramount Pest Control Service v. Brewer, 9 Cir., 1948, 170 F.2d 553, 554; id., 9 Cir., 1949, 177 F.2d 564, 565; Gillis v. Gillette, 9 Cir., 1949, 177 F.2d 7, 8.