McELHENNEY CO., Inc., W. F. Snipes, J. T. Snipes, George Toole, Mac Toole, R. P. Swofford, Charles L. Gasque and Harry Clinkscales, Plaintiffs;

v.

WESTERN AUTO SUPPLY COMPANY, Defendant.

Civ. A. No. 2135.

United States District Court
W. D. South Carolina,
Spartanburg Division.
Nov. 18, 1958.

Chester D. Ward, Jr., Spartanburg, S. C., for plaintiffs.

· Wyche, Burgess & Wyche, Greenville, ·S. C., Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendant.

WILLIAMS, District Judge.

Defendant has moved to dismiss the amended complaint on the ground that it fails to state claims upon which relief can be granted. The amended complaint seeks treble damages for alleged violations of Section 2 of the Sherman Act (15 U.S.C.A. § 2) and Section 3 of the Clayton Act (15 U.S.C.A. § 14) as authorized by Section 4 of the Clayton Act ·(15 U.S.C.A. § 15).

### The Parties

The defendant Western Auto Supply Company is engaged in the business of selling tires, tubes, batteries, auto accessories, sporting goods, home appliances, etc., at retail through some 350 company-owned stores and at wholesale ·to some 3,600 Associate Stores located throughout the United States. As of December 31, 1956, it operated seven company-owned stores and had 91 associate stores in South Carolina.

The plaintiffs, except McElhenney Co., Inc., were, prior. to 1954, five owners and .operators of their respective Associate .Stores in various towns in South Carolina. Each alleges that at various dates

between 1954 and 1956 his franchise from the defendant was cancelled but that he continued to operate either independently or by an affiliation with Firestone. Plaintiff McElhenney Co., Inc., from February 1954 to October 1956, had the exclusive franchise for the distribution at wholesale of Sylvania radio and television sets and parts in South Carolina.

### The Allegations of the Amended Complaint

The amended complaint alleges that the defendant did business with its Associate Stores, including the former dealers suing as plaintiffs herein, by means of a franchise. The Associate Store franchise is a vendor-purchaser contract by which defendant Western grants to the Associate the right to use the name "Western Auto Associate Store" in conjunction with the proprietor's name and agrees that it will sell the Associate merchandise on the same terms as all other Associate Stores. The Associate retains ownership, management and control of his store and only agrees under certain conditions to buy a stated amount of merchandise from Western for the opening stock of his store. The franchise is terminable by either party at any time on 60 days' written notice. Nothing in the franchise requires the Associate to deal exclusively with Western.

Plaintiff retailers contend that their franchises were cancelled because they insisted upon purchasing some items of "outside" merchandise, i. e., merchandise not distributed by defendant. Plaintiff McElhenney, the former Sylvania distributor, asserts that defendant's alleged policy against its Associate Stores handling "outside" merchandise curtailed its sales of Sylvania products to Western Auto Associate Stores in South Carolina, all to its loss and damage.

Plaintiffs' contentions are that the above alleged facts manifest an unlawful exclusive dealing arrangement in violation of Section 3 of the Clayton Act and an unlawful attempt to monopolize or monopolization in violation of Section 2 of the Sherman Act. Defendant, on the other hand, contends that the above allegations manifest no more than the exercise of the defendant's legal right to terminate the franchises of dealers who it deems do not adequately represent it. Judgment is sought by plaintiffs in the amount of $2,241,000 and costs and a reasonable attorney's fee.

### Discussion

It is fundamental that the purpose for the enactment of the federal anti-trust laws, including the Sherman and Clayton Acts, was to protect the public interest from the evils of monopolies and unreasonable restraints of trade in interstate commerce. Wilder Mfg. Co. v. Corn Products Refining Co., 1915, 236 U.S. 165, 35 S.Ct. 398, 59 L.Ed. 520. Accordingly, to recover in a private anti-trust suit the plaintiff must allege facts from which it can be determined that there has been a violation of the anti-trust laws together with damage to the plaintiff as a consequence of such violation. Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 1934, 72 F.2d 885; Schwing Motor Company v. Hudson Sales Corporation, D.C.Md.1956, 138 F.Supp. 899, affirmed 4 Cir., 1956, 239 F.2d 176; Nelligan v. Ford Motor Company, D.C. S.C.1958, 161 F.Supp. 738. See also Shotkin v. General Electric Co., 10 Cir., 1948, 171 F.2d 236; Feddersen Motors v. Ward, 10 Cir., 1950, 180 F.2d 519; Arthur v. Kraft-Phenix Cheese Corporation, D.C.Md.1937, 26 F.Supp. 824; Neumann v. Bastian-Blessing Co., D.C. N.D.Ill.1947, 70 F.Supp. 447.

If the amended complaint herein does not allege facts from which it can be ascertained that the defendant has violated the anti-trust laws with injury to the plaintiffs, defendant's motion to dismiss must be sustained.

### Section 3 of the Clayton Act

Section 3 of the Clayton Act, 15 U.S. C.A. § 14, provides as follows:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or

make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, ware, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale on such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

The amended complaint contains no allegations that the defendant actually leased, sold or contracted to sell any goods, wares, merchandise, machinery, supplies or other commodities on the condition, agreement or understanding that the plaintiffs or anyone else should not use or deal in the goods of a competitor of the defendant.

The plaintiffs contend that the defendant terminated the franchises of the retailer-plaintiffs on account of their handling of products not approved by the defendant and that this "course of dealing" constitutes a violation of Section 3 of the Clayton Act. The defendant contends that nothing more is involved than a permissible refusal to deal by a single trader acting unilaterally and not in concert with any competitor or anyone else, pursuant to the right reserved to it in its franchise agreements and in the exercise of its sound business judgment.

In Nelson Radio & Supply Co. v. Motorola, Inc., 5 Cir., 1952, 200 F.2d 911, certiorari denied, 1953, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356, a closely parallel situation was presented. There the plaintiff, a wholesaler of communications equipment, alleged that it had distributed defendant's products for several years prior to February 10, 1949. The contract under which the plaintiff operated contained a specific termination date but it also provided that it continued after that date subject to termination by written notice of either party. Prior to January 2, 1948, the defendant submitted to the plaintiff an agreement for the year 1948 and at the same time informed the plaintiff that it could not sell communications equipment manufactured by defendant's competitors. The plaintiff alleged that it signed the 1948 contract under coercion and further that during the period November 1947–February 10, 1949, the defendant notified it that it was not permitted to sell competing products. In November and December 1948 the parties sought to renew the 1948 agreement but the plaintiff insisted on the right to sell products manufactured by others than the defendant. The defendant resisted and the plaintiff's franchise was cancelled effective February 10, 1949. Holding these allegations to be insufficient to state a violation of Section 3 of the Clayton Act and affirming the dismissal of the complaint, the court said (200 F.2d at pages 915–916):

"Section 3 of the Clayton Act, by its express terms, covers only leases, sales, or contracts actually made on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods of a competitor of the lessor or seller. There is nothing whatever in the Act to suggest that it covers a situation where the manufacturer refuses to make a sale or enter into a contract, and it has been stated time and again that a manufacturer has the unquestioned right to refuse to deal with anyone for reasons sufficient to himself. [citations] For that matter, a review of all of the cases decided by the Supreme Court involving Section 3 of the Clayton Act, reveals that in each of them there was an agreement and not a mere refusal to deal. There is

a real difference between the act of refusing to deal and the execution of a contract which prevents a person from dealing with another. The plaintiff has not been injured as the result of a contract, either express or implied, which sought to prevent him from dealing in the goods of any competitor of the defendant.

"The judgment of the District Court dismissing the amended complaint was right and it is hereby affirmed."

The Motorola case was followed by Leo J. Meyberg Co. v. Eureka Williams Corp., 9 Cir., 1954, 215 F.2d 100, certiorari denied 1954, 348 U.S. 875, 75 S.Ct. 113, 99 L.Ed. 689. This was also an action under Section 3 of the Clayton Act charging that the defendant refused to continue business relations with the plaintiff because the latter insisted upon handling competing products. According to the allegations of the amended complaint in that case, the plaintiff was engaged in the wholesale distribution of electric vacuum cleaners, including the defendant's Eureka brand. In 1952 the defendant notified the plaintiff that unless the plaintiff ceased handling a competing line of cleaners, the Hoover brand, the defendant would cancel all business relations with the plaintiff, stating that "Hoover factory rebuilt cleaners at their special sale prices and Eurekas just can't live together in the same house any longer * * *." The District Court dismissed the complaint for failure to state a claim and the Court of Appeals affirmed, stating (215 F.2d 100):

"The complaint herein alleges a violation of § 3 of the Clayton Act, 15 U.S.C.A. § 14, by reason of the refusal of appellee to continue business relations with appellant unless appellant would agree to deal exclusively in the product of appellee. That section of the Clayton Act makes it unlawful to enter into any lease, sale, or contract conditioned upon the lessee or purchaser not dealing in the goods of a competi-

tor, where the effect of such lease, sale or contract may be to substantially lessen competition or create monopoly. The contract (of 1944) previously existing between the parties was, by its terms, terminable at will, and contained no provision violative of § 3 of the Clayton Act. In July, 1952, appellee terminated the contract by telegram for the reason heretofore stated, because appellant was continuing to deal in the product of a competitor of appellee.

"Prior to July, 1952, the contract between the parties did not forbid appellant to deal in products of a competitor of appellee. After July, 1952, there was no contract, lease or sale between the parties at all. It is manifest that there could be no violation of said § 3 by entering into an illegal lease, sale or contract.

"The judgment of the district court dismissing this case must therefore be, and it hereby is, affirmed."

The Court of Appeals for this Circuit has recently pointed out that the proscriptions of Section 3 are specific and prohibit only leases, sales or contracts for sales based on the condition that purchaser or lessee not deal in the goods of the competitor. Allied Equipment Co. v. Weber Engineered Products, 4 Cir., 1956, 237 F.2d 879. The court there state (at page 883):

"The final question involves Allied's claim for treble damages arising out of Weber's alleged breach of the antitrust laws. It is Allied's contention that Weber, by attempting to use the threat of cancellation to force Allied to enter into an illegal exclusive-dealing contract, engaged in unfair competition which was the proximate cause of pecuniary damage to Allied. Under Section 3 of the Clayton Act, upon which this claim is based, it is unlawful to enter into any lease, sale or contract which is conditioned

upon the lessee's or purchaser's not dealing in the goods of a competitor, where the effect of such lease, sale or contract may be substantially to lessen competition or to create a monopoly. There can be no violation of the Act unless there is a contract, sale or lease.

"Allied faces a dilemma on the point. If there was no contract denying it the right to handle products competitive to Weber, there was no violation of the antitrust laws. If there was such a contract, as we have already pointed out the breach was by Allied and so no damages accrued to it."

Accord: Cole v. Hughes Tool Co., 10 Cir., 1954, 215 F.2d 924; Hunter Douglas Corp. v. Lando Products, 9 Cir., 1954, 215 F.2d 372; Hudson Sales Corp. v. Waldrip, 5 Cir., 1954, 211 F.2d 268.

Refusals to deal and the right of customer selection on the part of a single trader have been upheld by the courts even though the refusal was prompted by the motive of securing exclusive dealers. Brosious v. Pepsi-Cola Co., D.C.M.D.Pa. 1945, 59 F.Supp. 429, affirmed, 3 Cir., 1946, 155 F.2d 99; Camfield Mfg. Co. v. McGraw Electric Co., D.C.Del.1947, 70 F.Supp. 477; Dublin Distributors, Inc. v. Edward & John Burke, Ltd., D.C.S.D. N.Y.1952, 109 F.Supp. 125. See also United States v. Colgate & Co., 1919, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992; Times-Picayune Pub. Co. v. United States, 1953, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277; Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co., 2 Cir., 1915, 227 F. 46. Nor can it make any difference that complaint is also made by a distributor of competing products as well as by disenfranchised dealers. Camfield Mfg. Co. v. McGraw Electric Co., supra.

 The anti-trust laws do not prohibit a manufacturer or distributor from selecting dealers who will devote their time and energies to selling the former's products and a manufacturer or distributor is not compelled to retain dealers having divided loyalties adverse to the interests of the said manufacturer or distributor. Under these circumstances Western was within its legal rights in discontinuing business relations with the plaintiff-retailers herein and announcing in advance the terms upon which it would continue to do business with them.

The basic fallacy inherent in plaintiffs' contention is that so long as they handled "outside" merchandise while keeping a franchise from the defendant they were permitted to handle such merchandise. When they ceased to have a franchise from the defendant it is quite apparent they could have been under no restriction imposed by the defendant. There is a fundamental difference between refusing to deal with a customer or potential customer and prohibiting that customer by contract from dealing with another. As long as the customer has a choice between dealing with his immediate supplier and dealing with others he may act of his own free will. If his immediate supplier determines that for reasons known only to himself, whether they be because of inadequate representation, unsatisfactory relationships, or others, he may terminate the relationship, then the dealer is free to deal with all other suppliers. It follows that at no point has there been a contract or agreement which prohibits the purchaser from dealing in the goods of another.

In the present case the amended complaint makes it clear that the defendant imposed no legal obligation on plaintiff retailers to refrain from handling "outside" merchandise. It seems that the defendant objected to its Associate dealers handling a few articles of competitive merchandise which were also offered to them by defendant. However, defendant had afforded the plaintiff retailers the benefit of its name and national advertising. It is not strange that defendant was unwilling to share its benefits with manufacturers and wholesalers of brands not handled by the defendant. Consequently, there is no inference to be drawn from defendants'

urging upon the plaintiff retailers that they restrict their operations to whatever extent possible to handling the goods and merchandise of defendant.

The cases relied upon by plaintiffs, United States v. Richfield Oil Corp., D.C.S.D.Cal.1951, 99 F.Supp. 280, affirmed per curiam, 1952, 343 U.S. 922, 72 S.Ct. 665, 96 L.Ed. 1334, and Carter Carburetor Corp. v. Federal Trade Commission, 8 Cir., 1940, 112 F.2d 722, are clearly distinguishable. Richfield, supra, was a companion case to United States v. Standard Oil Co. of California, D.C. S.D.Cal.1948, 78 F.Supp. 850, affirmed, 1949, 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371, and involved essentially the same question of the validity of requirements contracts under both Section 1 of the Sherman Act and Section 3 of the Clayton Act. The only type of agreement in the Richfield case not previously adjudicated in the Standard Stations case involved L–O Stations and as to these Richfield expressly admitted that it had agreements with the station operators requiring them to deal exclusively in Richfield products, its defense to this arrangement being that the operators were agents or employees of Richfield and consequently the arrangement was not within the purview of Section 3 of the Clayton Act. This defense was not sustained and the agreements were held illegal.

The Carter Carburetor case, supra, dealt with a situation wherein the defendant attempted the total destruction of a specific competitor by the use of preferential discounts which made the handling of the defendant's products unprofitable to non-exclusive dealers. This was a patent violation of Section 3 because discounts and rebates are specifically prohibited by the statute.

Plaintiffs further suggest that the amended complaint may be sustained under Section 3 of the Clayton Act with reference to the doctrine of the "tying" cases, taking the position that the defendant tied the sale of its allegedly "readily salable" items such as its tires and batteries, to the sale of its allegedly less popular items such as its appliances. Plaintiffs, however, have singularly failed to allege the existence of any tying agreement and the essentials of a tying contract are not present herein. See Judson L. Thomson Mfg. Co. v. Federal Trade Commission, 1 Cir., 1945, 150 F. 2d 952; International Salt Co. v. United States, 1947, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20; Times-Picayune Pub. Co. v. United States, 1953, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277; Nelligan v. Ford Motor Co., D.C.W.D.S.C.1958, 161 F.Supp. 738.

The amended complaint is further deficient in that plaintiffs have not demonstrated any adverse effect upon interstate commerce. Section 3 of the Clayton Act requires that the prohibited contract, sale or lease have the potential effect to "substantially lessen competition or tend to create a monopoly * * *." No facts are alleged to demonstrate such a possible effect.

The gist of plaintiffs' grievances is merely that the defendant, for reasons sufficient to itself, exercised its undoubted and reserved right to terminate the franchises of the plaintiff retailers. This is purely a private controversy and one not cognizable under Section 3 of the Clayton Act.

The amended complaint does not allege a violation of Section 3 of the Clayton Act.

### Section 2 of the Sherman Act

Section 2 of the Sherman Act provides as follows:

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding fifty thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

■ Paragraph 3 of the second count of plaintiffs' amended complaint alleges that the defendant engaged in a "scheme and plan by which defendant intended to monopolize or attempt[ed] to monopolize certain lines of trade in interstate commerce." Paragraph 19 of the amended complaint defines the market involved as "the sale and distribution of [defendant's] various products manufactured by it * * *." Defendant in reality is charged with monopolizing or attempting to monopolize the market for its own products. But every manufacturer has a monopoly on its own brand name and such natural monopoly does not violate Section 2 of the Sherman Act. The principle is well stated by Judge Chesnut in Arthur v. Kraft-Phenix Cheese Corp., D.C.Md.1937, 26 F.Supp. 824, at page 828, where he said:

"* * * Every manufacturer has naturally a complete monopoly of his particular product especially when sold under his own private brands, and no private controversy with a distributor could legally tend to increase that type of a natural monopoly. The Sherman Act is, therefore, clearly not really involved."

The Supreme Court had recent occasion to pass upon the same question in United States v. E. I. duPont de Nemours & Co., 1956, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264, where duPont produced approximately 75% of all cellophane manufactured in the United States. This was held not to violate the anti-trust laws because cellophane competed with other flexible wrapping materials and duPont did not possess market control over the entire market involved. The court said, 351 U.S. at page 393, 76 S.Ct. at page 1006:

"* * * Thus one can theorize that we have monopolistic competition in every nonstandardized commodity with each manufacturer having power over the price and production of his own product. However, this power that, let us say, automobile or soft-drink manufacturers have over their trademarked products is not the power that makes an illegal monopoly. Illegal power must be appraised in terms of the competitive market for the product."

Accord: Packard Motor Co. v. Webster Motor Car Co., 1957, 100 U.S.App.D.C. 161, 243 F.2d 418, 420; Schwing Motor Company v. Hudson Sales Corporation, D.C.Md.1956, 138 F.Supp. 899, 902, affirmed 4 Cir., 1956, 239 F.2d 176.

■ There is no allegation in the amended complaint that the defendant monopolizes the home and auto supply business in any relevant market. The most that can be said is that plaintiffs allege that the defendant is "dominant" in that field. This is not sufficient, for dominance is not the equivalent of monopoly power. United States v. Aluminum Company of America, D.C.S.D.N.Y. 1950, 91 F.Supp. 333, 346; United States v. E. I. duPont de Nemours, D.C. Del.1953, 118 F.Supp. 41, 207.

No allegations in the amended complaint herein demonstrate that the defendant either possessed market control or engaged in acts and practices so approaching monopoly control as to create a dangerous probability thereof. Hence there is no factual predicate for the application of Section 2 of the Sherman Act. Mere allegations of annual business volume or total number of outlets are totally insufficient. Mackey v. Sears Roebuck & Co., 7 Cir., 1956, 237 F.2d 869, 873. See also United States v. Columbia Steel Co., 1948, 334 U.S. 495, 533, 68 S.Ct. 1107, 92 L.Ed. 1533.

Plaintiffs' claim under the Sherman Act is further deficient in failing to allege any act or conduct evidencing intent to abuse, maintain or exercise monopoly power or facts demonstrating the existence of a specific intent to monopolize as is required to sustain the offenses charged. United States v. Griffith, 1948, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236; American Tobacco Co. v. United States, 1946, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575; Swift & Co. v. United States, 1905, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518. The acts

and conduct alleged as shown in the discussion of plaintiffs' claim under Section 3 of the Clayton Act, supra, demonstrate no more than a permissible refusal to deal on the part of the defendant. Since the defendant possessed the legal right to terminate the franchises of its dealers for reasons sufficient to itself, the exercise of this right is not a violation of the Sherman Act or Clayton Act. See Brosious v. Pepsi-Cola Co., supra; Dublin Distributors, Inc. v. Edward & John Burke, Ltd., supra. See also ABC Distributing Co. v. Distillers Distributing Corp., 1957, 154 Cal.App. 2d 175, 316 P.2d 71.

The amended complaint does not allege a violation of Section 2 of the Sherman Act.

### Conclusion

It is concluded that the amended complaint does not allege any violation of Section 3 of the Clayton Act or Section 2 of the Sherman Act. It does not state a claim upon which relief can be granted under the anti-trust laws. The motion to dismiss the amended complaint is hereby granted.